IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
May 6, 2002 Session

## CAROLYN JONES v. BUREAU OF TENNCARE

**Appeal from the Chancery Court for Davidson County**
**No. 00-14-1     Irvin H. Kilcrease, Chancellor**

_____

**No. M2001-01065-COA-R3-CV - Filed June 20, 2002**

_____

Beginning in 1994, the Bureau of TennCare ("TennCare") provided insurance coverage for home health services for one its enrollees, Carolyn Jones ("Jones"), who is bed-ridden due to rheumatoid arthritis.[1]  In 1997, TennCare denied Jones coverage for home health services, and Jones appealed this determination.  The Administrative Law Judge held TennCare was not required to provide coverage for home health services to Jones because the services are not medically necessary for her.  Under the Uniform Administrative Procedures Act, Jones appealed the administrative agency's determination to the Chancery Court of Davidson County ("Trial Court") which affirmed the determination.  Jones now appeals to this Court.  We affirm.

**Tenn. R. Civ. P. 3 Appeal as of Right; Judgment of the**
**Chancery Court Affirmed; Case Remanded.**

D. MICHAEL SWINEY, J., delivered the opinion of the court, in which BEN H. CANTRELL, P.J., and WILLIAM C. KOCH, JR., J., joined.

Gordon Bonnyman and Lisa J. D'Souza, Nashville, Tennessee, for the Appellant, Carolyn Jones.

Paul G. Summers and Sue A. Sheldon, Nashville, Tennessee, for the Appellee, Bureau of TennCare.

_____

[1]  The Bureau of TennCare is the division within the State Department of Finance and Administration responsible for administering the TennCare program.  During the pendency of these proceedings, the Governor, through Executive Order No. 23 effective October 19, 1999, transferred TennCare from the State Department of Health to the State Department of Finance and Administration.

**OPINION**

## Background

Jones is, at the time of this opinion, nearly 55 years old and lives alone at her home in West Tennessee. Jones was diagnosed at age 16 with rheumatoid arthritis which has progressed to the point that Jones is currently bed-ridden and is able only to lie flat in her bed. Jones also is legally blind and, as a result, cannot see well enough to read or watch television. Jones also has been diagnosed with a panic disorder. Due to her disabilities, Jones is not physically able to perform daily tasks such as bathing or using a bed pan without assistance. Jones, however, is able to feed herself, drink liquids, take medication and use the telephone unassisted. Jones is unwilling to move out of her home into a nursing home. Jones' only income is Supplemental Security Income disability benefits. Jones has a daughter and a sister who live nearby and provide her some limited assistance.

The record shows Jones has been receiving home health services since approximately 1988.[2] These services, performed by Certified Nursing Assistants ("CNA's"), were initially covered by federal Medicaid and after 1994, by TennCare. In October or November 1997, TennCare's managed care organization ("MCO"), BlueCare, notified Jones it was denying coverage for Jones' home health services.[3] At the time of BlueCare's denial, Jones' treating physician, Dr. Jack G. Pettigrew, was ordering daily home health services for Jones. Upon Jones' request for reconsideration, BlueCare advised Jones in November 1997, that home health services would no longer be provided because the services constituted "custodial care – not medically indicated." Thereafter, Jones again appealed BlueCare's decision, and BlueCare referred Jones' appeal to the Bureau of TennCare. On December 17, 1997, TennCare's Associate Medical Director determined that Jones' home health services were not medically necessary. Jones' appeal was then transferred to the TennCare Office of General Counsel for an administrative hearing.

The administrative hearing was held in April 1998. Jones participated by telephone and was represented by counsel at the hearing. TennCare and BlueCare also participated as parties at the administrative hearing.[4] Lisa Key, a Registered Nurse with the home health care agency which

---

[2] Jones testified that prior to 1988, she received home health services through the County Health Department.

[3] The TennCare regulations define "managed care organization" as follows:

> [A]n appropriately licensed Health Maintenance Organization or a Preferred Provider Organization approved by the Bureau of TennCare as capable of providing medical services in the TennCare program.

Tenn. Comp. R. & Regs., ch. 1200-13-12-.01(24).

[4] After TennCare filed its Notice of Hearing, Blue Cross/Blue Shield of Tennessee, acting through its MCO, BlueCare, filed a Petition to Intervene based upon its contractual agreement with TennCare to provide "medically
(continued...)

has provided services to Jones since 1988, testified. Key testified the CNA's assist Jones with bathing and hair care; assist Jones with her elimination needs; examine her skin for breakdown; assist with medication but do not administer medication; and ensure that Jones has food and water at her bedside.

Jones' treating physician, Dr. Pettigrew, did not testify at the hearing, but instead submitted a letter. In the letter dated February 10, 1998, Dr. Pettigrew wrote, in pertinent part, as follows:

> [Jones] is a 49 year old totally bed-ridden rheumatoid arthritic female, who requires 24 hour care and she is unable to do any of her ADL's [activities of daily living] without total assistance. The family has been very good support for her. To my knowledge, since I've been caring for this patient from November 1985, I do not know of a single time she has required hospitalization due to the excellent coordinated care she has received through her family and Home Health.

> I think it would be a tremendous disservice to the patient if her Home Health is terminated because of the multiple complications and probable hospitalizations that would occur. . . .

Dr. David Williams, a medical examiner for BlueCare, testified that he found Jones' request for daily home health care not to be medically necessary. In reviewing Jones' medical chart, Dr. Williams found significant Dr. Pettigrew's orders for personal care, including changing Jones' bed linens and light housekeeping. Dr. Williams testified that these services did not "constitute a skilled level of care and, as such, were not medically necessary." Dr. Williams further testified that all unskilled, or custodial, care was not medically necessary.

In addition, Dr. Thomas A. Turner, a medical consultant for the State who reviews grievances against TennCare's MCO's, testified it was his opinion that home health services were not a medical necessity for Jones because the services did not meet the criteria set forth in TennCare's regulations. Dr. Turner characterized the home health care provided to Jones as "personal care" and for Jones' convenience and not a medical necessity. When asked about the effect of Jones' loss of home health services, Dr. Turner testified that exacerbation of Jones' condition, end-stage rheumatoid arthritis, would be a consideration but that her medical record did not show a problem with exacerbation. Dr. Turner agreed the CNA's can observe Jones for complications but added that most adults could do the same thing. Likewise, Dr. Turner testified that, like the CNA's, most adults could supervise Jones' medication intake and report any changes in Jones' condition to her physician.

---

[4](...continued)
necessary covered health services for TennCare enrollees. . . ." This petition was granted.

In August 1999, the Administrative Law Judge ("ALJ") entered an initial order ("Initial Order"), holding that TennCare was not required to cover daily home health services to Jones because TennCare proved, by a preponderance of the evidence, the services are not medically necessary for Jones and, therefore, were not a "covered" service.[5] The Initial Order stated that while TennCare carried its burden of establishing a *prima facie* case, Jones did not "offer persuasive medical evidence to rebut or contradict this *prima facie* case." (italics added).

The ALJ's findings regarding Dr. Pettigrew's letter in the Initial Order are, in pertinent part, as follows:

> [I]t is also noted that this letter does not specifically address the issue of the "medical necessity" of home health aides for [Jones]. While Dr. Pettigrew expresses general outrage at the proposed termination of home health care services, he does not state why they are currently medically necessary to her, apart from his vague, non-specific conclusions that "multiple complications and probable hospitalizations" would occur should these services be terminated. He does not address in this letter any particular aspects of [Jones'] medical condition that these daily home health aides address nor how the cessation of these services would specifically place [Jones] in medical jeopardy.

The Initial Order also found that, despite Dr. Pettigrew's assertions, the proof showed Jones did not require 24-hour care and that she did not need total assistance with all of her activities of daily living, stating that:

> [Jones] is able to reach for food and feed herself, reach for and take drinks when she is thirsty, reach for and use the telephone at will, and self-administer her own medication. Without question, Dr. Pettigrew's admiration for the good care [Jones] has been receiving at the hands of her family and the home health aides is admirable, *but he does not, to any specific degree of medical certainty, establish for the record why, based upon [Jones'] particular medical condition, the home health aides are currently* <u>*medically*</u> *necessary for her.*

(emphasis added).

The Initial Order states the ALJ's conclusion as follows:

---

[5] The ALJ found, in its Initial Order, that under State administrative procedure regulations, TennCare had the burden of proof since it was the party seeking to "change the present state of affairs. . . ." Tenn. Comp. R. & Regs., ch.1360-4-1-.02(7). This finding is not disputed on appeal.

After consideration of the entire record in this matter, it is
DETERMINED that the Bureau of TennCare is NOT REQUIRED at
this time to approve, provide and pay for home health aide (certified
nursing assistant) services to [Jones] seven (7) days a week for the
performance of "personal care" functions such as bed bath, nail care,
skin care, hair care, assisting [Jones] with p.r.n. ("as needed")
medications, assisting [Jones] with bed pan p.r.n. . . ., changing linen,
and light housekeeping. The State has proven by a preponderance of
the evidence that these daily home health care services are of a type
that are not medically necessary for [Jones] to receive, and therefore,
they are non-covered services under the TennCare regulations.

Thereafter, pursuant to the Uniform Administrative Procedures Act, Tenn. Code Ann.
§ 4-5-315, Jones appealed the Initial Order. In November 1999, after a review of the administrative
record from the April 1998, hearing, the designee of the Commissioner of the Tennessee Department
of Finance & Administration, in a Final Administrative Order, affirmed the Initial Order and
incorporated it by reference thereto. Pursuant to Tenn. Code Ann. § 4-5-322, Jones timely appealed
the Final Administrative Order to Davidson County Chancery Court.

Only Jones and TennCare participated as parties in the appeal to the Trial Court. In
March 2001, after a review of the administrative record and the technical record of the Trial Court,
the Chancellor entered an Order of Dismissal which stated, in pertinent part, as follows:

[T]he Court adopts the Findings of Fact as set forth by the [ALJ] in
the [Initial Order], finding that such order is supported by substantial
and material evidence. . . .

Jones appeals.

## Discussion

On appeal and although not exactly stated as such, Jones raises the following issues
for this Court's consideration: (1) whether at the administrative hearing, TennCare had the burden
of establishing changed circumstances such that home health services were no longer medically
necessary for Jones; and (2) whether the Administrative Law Judge erred in finding that TennCare
was not required to provide coverage for Jones' home health services because the services were
"unskilled" as opposed to "skilled" nursing services.[6]

TennCare, on appeal, contends the ALJ correctly determined the home health services
provided to Jones are not medically necessary for her. Neither party disputes that under the Uniform

---

[6] Jones initially raised an Americans with Disabilities Act issue but withdrew this argument in her Reply Brief.

Administrative Procedures Act, TennCare, as the party seeking to "to change the present state of affairs," had the burden of proof. Tenn. Comp. R. & Regs., ch.1360-4-1-.02(7).[7] The parties, however, do dispute what it was TennCare had the burden to prove at the administrative hearing. Jones argues TennCare had the burden to show both "changed circumstances" and that the home health services are not medically necessary. TennCare argues its only burden was to show the home health services are not medically necessary for Jones.

Tenn. Code Ann. § 4-5-322(h) addresses the narrow scope of judicial review of an administrative agency decision as follows:

> The court may affirm the decision of the agency or remand the case for further proceedings. The court may reverse or modify the decision if the rights of the petitioner have been prejudiced because the administrative findings, inferences, conclusions or decisions are:
>
> > (1) In violation of constitutional or statutory provisions;
> >
> > (2) In excess of the statutory authority of the agency;
> >
> > (3) Made upon unlawful procedure;
> >
> > (4) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or
> >
> > (5) Unsupported by evidence which is both substantial and material in the light of the entire record.
>
> In determining the substantiality of evidence, the court shall take into account whatever in the record fairly detracts from its weight, but the court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact.

The term "substantial and material evidence" has been defined as "'such relevant evidence as a reasonable mind might accept to support a rational conclusion and such as to furnish a reasonably sound basis for the action under consideration.'" *Papachristou v. Univ. of Tennessee*, 29 S.W.3d 487, 490 (Tenn. Ct. App. 2000) (quoting *Clay Co. Manor, Inc. v. State*, 849 S.W.2d 755, 759 (Tenn. 1993)). This Court has also described it as requiring "'something less than a preponderance of the evidence . . . but more than a scintilla or glimmer.'" *Gluck v. Civil Serv. Comm'n*, 15 S.W.3d 486, 490 (Tenn. Ct. App. 1999) (quoting *Wayne Co. v. State Solid Waste*

---

[7] BlueCare is not involved in this appeal.

*Disposal Control Bd.*, 756 S.W.2d 274, 280 (Tenn. Ct. App. 1988)). Judicial review of an administrative agency's decision under the "substantial and material evidence" standard, however, subjects the agency's decision to close scrutiny. *Sanifill of Tennessee, Inc. v. State Solid Waste Disposal Control Bd.*, 907 S.W.2d 807, 810 (Tenn. 1995).

When reviewing a trial court's review of an administrative agency's decision, this Court essentially is to determine "whether or not the trial court properly applied the . . . standard of review" found at Tenn. Code Ann. § 4-5-322(h). *Papachristou v. Univ. of Tennessee*, 29 S.W.3d at 490. This Court addressed its judicial review of evidence contained in the administrative record as follows:

> While this Court may consider evidence in the record that detracts from its weight, [this] [C]ourt is not allowed to substitute its judgment for that of the agency concerning the weight of the evidence. . . .

*Gluck v. Civil Serv. Comm'n*, 15 S.W.3d at 490 (citations omitted); *see also McClellan v. Board of Regents of State Univ.*, 921 S.W.2d 684, 693 (Tenn. 1996) (holding that this Court "is not at liberty to reevaluate the evidence or substitute our judgment for that of the factfinder").

Judicial review of an agency's construction of a statute and its application of the statute to the facts of the case is a determination involving a question of law. *Patterson v. State Dept. of Labor and Workforce Dev.*, 60 S.W.3d 60, 62 (Tenn. 2001). Accordingly, this Court's review of such matters is *de novo* without any presumption of correctness. *Id.* With respect to an agency's interpretation of its own rules and regulations, courts afford deference and controlling weight to such determinations unless plainly erroneous or inconsistent with the regulation. *Profill Dev., Inc. v. Dills*, 960 S.W.2d 17, 27 (Tenn. Ct. App. 1997) (citing *Jackson Express, Inc. v. State Public Serv. Comm'n*, 679 S.W.2d 942, 945 (Tenn. 1984)).

On appeal, Jones first contends that TennCare had the burden of establishing "changed circumstances" before Jones' home health services could be terminated. As authority, Jones cites one case, *United Cities Gas Co. v. State Public Serv. Comm'n*, 789 S.W.2d 256, 259 (Tenn. 1990). We have reviewed this case and find it does not stand for the proposition for which Jones cites it. Likewise, we found nothing in our research to support Jones' position that if TennCare once provides coverage, even if in error, it must show a "change of circumstances" before that coverage can be terminated. Jones' apparent position on this issue is contrary to the clear legislative intent to provide benefits only for covered services. *See Alexander v. Choate*, 496 U.S. 287, 303, 105 S.Ct. 712, 721, 83 L.Ed.2d 661, 676 (1985). We hold, therefore, Jones' argument that TennCare had the burden of establishing a change of circumstances before it could terminate Jones' home health services is without merit. Accordingly, we hold the ALJ correctly framed the issue for her determination to be whether TennCare carried its burden of establishing that the provided home health services are not medically necessary for Jones.

Jones' next argument essentially is that TennCare and its MCO, BlueCare, erroneously denied coverage for Jones' home health services solely because the services were "unskilled," or custodial, as opposed to "skilled" nursing services and that the ALJ affirmed this determination in the Initial Order. Jones contends that state Medicaid plans, such as TennCare, are required by federal statutes and Medicaid regulations to provide unskilled home health services. Jones, however, does not dispute that home health services are not "covered" services unless medically necessary. Jones contends that TennCare has impermissibly modified what type of home health care constitutes "medically necessary" care to include only skilled nursing care. Because this issues involves an administrative agency's construction of federal and state legislation, our standard of review of this particular issue is *de novo* with no presumption of correctness. *Patterson v. State Dept. of Labor and Workforce Dev.*, 60 S.W.3d at 62.

A determination of this issue first requires this Court to review relevant federal and state enabling legislation and regulations. Tennessee has elected to participate in Medicaid under Title XIX of the Social Security Act of 1965 and is, therefore, obligated to provide Medicaid services to qualified recipients consistent with federal law. *Smith v. Chattanooga Med. Investors, Inc.*, 62 S.W.3d 178, 186 (Tenn. Ct. App. 2001).[8] "The [Medicaid] Act gives the States substantial discretion to choose the proper mix of amount, scope, and duration limitations on coverage, as long as care and services are provided in 'the best interests of the recipients.'" *Alexander v. Choate*, 496 U.S. at 303, 105 S.Ct. at 721, 83 L.Ed.2d at 676 (quoting 42 U.S.C. § 1396a(a)(19). The federal regulation, 42 CFR § 440.230, addresses states' discretion in implementing Medicaid plans, as follows:

> (b) Each service must be sufficient in amount, duration, and scope to reasonably achieve its purpose. . . .
>
> (d) *The agency may place appropriate limits on a service based on such criteria as medical necessity* or on utilization control procedures.

(emphasis added).

With respect to home health services, 42 U.S.C. § 1396a(a)(10)(D) provides that "[a] State plan for medical assistance must - provide for the inclusion of home health services for any individual who, under the State plan, is entitled to nursing facilities. . . ." In addition, the Medicaid regulation, 42 CFR § 440.70, provides, in pertinent part, as follows:

---

[8] *See also Alexander v. Choate*, 496 U.S. at 290, 105 S.Ct. at 714, 83 L.Ed.2d at 665 n.1, which described Medicaid as follows:

> Medicaid is a joint state-federal funding program for medical assistance in which the Federal Government approves a state plan for the funding of medical services for the needy and then subsidizes a significant portion of the financial obligations the State has agreed to assume. Once a State voluntarily chooses to participate [in] Medicaid, the State must comply with the requirements of Title XIX and applicable regulations.

(a) "Home health services" means the services in paragraph (b) of this section that are provided to a recipient –

(1) At his place of residence . . . ; and

(2) On his or her physician's orders as part of a written plan of care that the physician reviews every 60 days. . . .

(b) Home health services include the following services and items. Those listed in paragraphs (b)(1), (2) and (3) of this section are *required services.* . . .

(1) Nursing service, as defined in the State Nurse Practice Act . . . by a home health agency . . . or . . . a registered nurse. . . .

(2) *Home health aide service provided by a home health agency.* . . .

(emphasis added).

The State statute which addresses the kinds of medical services to be provided by the State through TennCare provides, in pertinent part, as follows:

(a) Medical assistance . . . shall be provided to those classes of individuals determined to be eligible under § 71-5-106. This medical assistance, in the amount, scope, and duration determined by the commissioner of health and to the extent permitted by federal law, may include: . . .

(12) Home health care services. . . .

Tenn. Code Ann. § 71-5-107.

In addition, TennCare regulations provide:

(1)     TennCare managed care organizations shall cover, at a minimum, the following services and benefits consistent with and in accordance with the Title XIX Medicaid State plan in existence as of December 31, 1993 and Title XIX CFR requirements governing benefits and Sections 5.01 through 5.03 of Article V of the State of Tennessee Comprehensive Medical and Hospitalization Program Plan benefits, subject to any applicable limitations described herein. [MCO's] shall not impose any service limitations that are more restrictive than

-9-

those described herein; however, *this provision shall not limit the [MCO's] ability to establish procedures for the determination of medical necessity.*

SERVICE                                                    BENEFIT

\* \* \* \* \* \* \* \*

(1)(n)  Home Health Care                        *As medically necessary.*

Tenn. Comp. R. & Regs., ch.1200-13-12-.04 (emphasis added).

The term "medically necessary" is defined by TennCare regulations as follows:

[S]ervices or supplies provided by an institution, physician, or other provider that are required to identify or treat a TennCare enrollee's illness or injury and which are:

(a) Consistent with the symptoms or diagnosis and treatment of the enrollee's condition, disease, ailment or injury; and

(b) Appropriate with regard to standards of good medical practice; and

(c) Not solely for the convenience of an enrollee, physician, institution or other provider; and

(d) the most appropriate supply or level of services which can safely be provided to the enrollee. . . .;

Tenn. Comp. R. & Regs., ch.1200-13-12-.01(25).

TennCare regulations provide a list of services which are excluded from coverage stating, in pertinent part, as follows:

[MCO's] are not obligated to pay for non-covered services or for non-emergency services obtained outside the health plan. Non-covered services include, but are not limited to, the following:

(1)     Services which are not medically necessary. . . .

Tenn. Comp. R. & Regs., ch.1200-13-12-.10(1).

The applicable federal and state statutes and regulations show TennCare, as a state Medicaid plan, must make available home health services to its enrollees but may deny coverage of a service that is not medically necessary. Jones does not dispute that TennCare may deny coverage if a service is not medically necessary. Jones' contention on appeal is that the MCO, BlueCare, and, thereafter, TennCare impermissibly changed the definition of "medically necessary" to exclude "unskilled" services for home health care. Jones argues that TennCare's decision to exclude such home health services because the services were "unskilled" violated federal law, specifically 42 U.S.C. § 1396a(a)(10)(D) and 42 CFR § 440.70(b). Jones further contends the ALJ erroneously used this "skilled/unskilled" care distinction when determining that the provided home health services are not medically necessary for Jones. In support of her argument, Jones points to the expert medical testimony proffered by Dr. David Williams of BlueCare and Dr. Thomas A. Turner of TennCare.[9] As discussed, Dr. Williams testified that all unskilled, or custodial care, was not medically necessary, or, in other words, unskilled care is never medically necessary.

It is difficult to determine how much weight the ALJ placed upon Dr. Williams' testimony since the Initial Order's voluminous findings of fact included a summary of *all* testimony, including Dr. Williams'. The ALJ's Conclusions of Law contained in the Initial Order show the ALJ relied upon testimony of *both* Dr. Williams and Dr. Turner in determining that home health services are not medically necessary for Jones. The ALJ's legal conclusions do not include a holding regarding the "skilled/unskilled" care distinction. We hold to the extent, if at all, the ALJ relied upon Dr. Williams' "skilled/unskilled care" distinction in determining that Jones' home health services are not medically necessary, it was error to do so. *See* Tenn. Code Ann. § 4-5-322(h)(1); *Patterson v. State Dept. of Labor and Workforce Dev.*, 60 S.W.3d at 62. The applicable federal and state statutes and regulations do not provide for such a distinction to determine whether or not a service is medically necessary. In fact, Medicaid regulation, 42 CFR § 440.70(b)(1) & (2), shows the home health services that a state is required to provide include both skilled nursing services and unskilled home health aide services. It is clear, however, that the ALJ held that the daily home health care services provided to Jones are not "medically necessary", without specifically stating any reliance upon the "skilled/unskilled" care distinction, and, therefore, are not covered services under the TennCare regulations.

Our inquiry, however, must continue to determine whether the Trial Court properly applied the standard of review found at Tenn. Code Ann. § 4-5-322(h)(5) to the ALJ's determination that the provided home health care services are not medically necessary even without any reliance upon the "skilled/unskilled" care distinction. *Papachristou v. Univ. of Tennessee*, 29 S.W.3d at 490. As discussed, the Trial Court found the ALJ's determination was supported by substantial and

[9] Jones also points to an internal memorandum of BlueCare dated February 1997. The February 1997, memorandum addresses a draft supplement to the BlueCare Members' Handbook which includes a list of exclusions. The record shows that within this supplemental list of coverage exclusions is the following:

for services mainly for custodial care, sanitaria or convalescent care or rest cures, except as specified. . . .

material evidence. The record on appeal shows Dr. Thomas A. Turner, a medical consultant who provided testimony on behalf of TennCare, testified that, upon his review of Jones' medical records, he found the home health services are not medically necessary for Jones. Dr. Turner reviewed the definition of "medically necessary" set forth in the TennCare regulation, Tenn. Comp. R. & Regs., ch.1200-13-12-.01(25), and testified that Jones' home health services did not meet all of the regulation's criteria. Dr. Turner testified the services ordered by Jones' treating physician, Dr. Pettigrew, were not medically necessary and instead, best could be characterized as "personal care" and for Jones' convenience. The ALJ found Jones offered little, if any, evidence that the home health services are medically necessary to counter TennCare's proof that they are not.

As discussed, this Court, just as the Trial Court, cannot reevaluate the evidence or substitute its judgment concerning the weight of the evidence for that of the administrative agency. *Gluck v. Civil Serv. Comm'n*, 15 S.W.3d at 490. Moreover, our review under the Uniform Administrative Procedures Act is limited, and an administrative agency's interpretation of its own rules and regulations is afforded deference. *Profill Dev., Inc. v. Dills*, 960 S.W.2d at 27. TennCare established, through Dr. Turner's testimony, that the home health services ordered for Jones by Dr. Pettigrew are not "medically necessary." Jones offered only the letter from her treating physician, Dr. Pettigrew. The ALJ found this letter fell short of establishing that the home health services are medically necessary for Jones. In fact, it is clear from the Initial Order that the ALJ assigned very little, if any, weight to Dr. Pettigrew's letter. *See* Tenn. Code Ann. § 4-5-322(h) (stating that upon judicial review "the court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact"). The relevant legislation and regulations of Medicaid and TennCare clearly establish TennCare may deny coverage for services that are not medically necessary, and Jones does not dispute this. Even after properly excluding Dr. Williams' conclusion, as we have, that these provided services are not medically necessary solely because they did not constitute a skilled level of care, the record still contains substantial and material evidence that the home health services are not medically necessary for Jones. This Court is left to wonder why, if Dr. Pettigrew believed these home health care services are "medically necessary" as services required to treat Jones' illness, such testimony was not presented below.

This is a difficult decision due to Jones' circumstances. While we acknowledge the difficulty Jones and her family may endure due to the absence of home health services, the record before us does not allow us to find that the determination that home health services are not medically necessary for Jones is not supported by substantial and material evidence. *See* Tenn. Code Ann. § 4-5-322(h)(5). We also acknowledge that Jones, who is bed-ridden and legally blind, has been able to live rather independently and has had no complications such as bedsores, likely because of the quality of home health services she has received in the past. Based upon the proof contained in the record before us, however, we have no alternative but to find the ALJ's determination that the home health services are not medically necessary for Jones is supported by substantial and material evidence and that the Trial Court applied the proper standard of review in affirming the ALJ's determination. Likewise, we find no other basis under Tenn. Code Ann. § 4-5-322(h) to reverse the ALJ's ultimate decision under the narrow scope of judicial review allowed us. Given the record before us, we hold the Trial Court properly applied the standard of review found at Tenn. Code Ann.

§ 4-5-322(h) and that the ALJ's determination that the home health services are not medically necessary for Jones is supported by substantial and material evidence. *See* Tenn. Code Ann. § 4-5-322(h).[10] Accordingly, we affirm the Trial Court's decision to affirm the ALJ's decision that the home health services provided to Jones are not medically necessary.

After oral argument in this Court, Jones filed a Motion to Supplement Brief with Newly Disclosed Statements of TennCare Policy. The TennCare policy statements at issue are two TennCare internal memoranda dated September 2, 1999, and September 9, 1999, regarding what types of services home health care provides. In the September 2, 1999, memo, TennCare defined "Home Health Aide Services" as including the type of personal care that Jones was receiving from the CNA's. Both memoranda, however, provide as "coverage criteria" that home health care be medically necessary. Jones states in her motion she obtained the memoranda from TennCare on April 15, 2002, and that she obtained the documents through discovery in her federal ADA lawsuit. In her motion, Jones requests this Court to review the TennCare policy statements or alternatively, remand the matter to the ALJ for reconsideration in light of the memoranda.

After considering Jones' motion, the two September 1999, memoranda, and TennCare's reply to Jones' motion, we find Jones' motion to supplement is not well-taken. While Jones' motion is captioned as a motion to supplement Jones' brief, the substance of the motion shows it is actually a motion to supplement the record with additional evidence. While judicial review is generally confined to the administrative agency record, a party may request the court to grant leave to present additional evidence. Tenn. Code Ann. § 4-5-322(e) & (g). Jones' motion does not satisfy the requirement of Tenn. Code Ann. § 4-5-322(e) that the motion be filed prior to the hearing date. Jones states in her motion that she obtained the two memoranda in April 2002, which was *prior* to the oral argument held in this Court the following month.

In addition, and perhaps more importantly, the two memoranda are not "material" evidence which is another requirement of Tenn. Code Ann. § 4-5-322(e). As discussed, substantial and material evidence supports the ALJ's determination that the home health services are not medically necessary for Jones. Both memoranda state home health care services are covered only if medically necessary, but do nothing to establish that these home health services are medically necessary *for Jones*. Therefore, the two memoranda, even if considered, would have no bearing on

---

[10] It should be noted the United States Supreme Court, in reviewing Tennessee's Medicaid program which had been challenged under the Rehabilitation Act, held:

> Medicaid programs do not guarantee that each recipient will receive that level of health care precisely tailored to his or her particular needs. Instead, the benefit provided through Medicaid is a particular package of health care services.... That package of services has the general aim of assuring that individuals will receive necessary medical care, but the benefit provided remains the individual services offered – "not adequate health care."

*Alexander v. Choate*, 496 U.S. at 303, 105 S.Ct. at 721, 83 L.Ed.2d at 676.

the outcome of this matter and are, therefore, not material evidence. Accordingly, Jones' motion to supplement is denied.

## Conclusion

The judgment of the Trial Court is affirmed, and this cause is remanded to the Trial Court for such further proceedings as may be required, if any, consistent with this Opinion and for collection of the costs below. The costs on appeal are assessed against the Appellant, Carolyn Jones, and her surety.

_____
D. MICHAEL SWINEY, JUDGE