IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs July 26, 2013

**Larry Echols v. City of Memphis**

**Appeal from the Chancery Court for Shelby County**
**No. CH0822122     Arnold B. Goldin, Judge**

_____

**No. W2013-00410-COA-R3-CV - Filed September 16, 2013**

_____

A twenty-year veteran of the Memphis Police Department was terminated based upon his involvement with a private security company, in violation of departmental policies, and his untruthfulness during the department's investigation. The officer filed a petition for review in chancery court, and the chancery court upheld his termination. The officer appeals, arguing that the chancery court should have allowed him to introduce evidence of another officer who was treated differently, in violation of his equal protection rights. He also argues that he was impermissibly punished twice for the same conduct. We affirm.

**Tenn. R. App. P. 3, Appeal as of Right; Judgment of the Chancery Court Affirmed**

Alan E. Highers, P.J., W.S., delivered the opinion of the Court, in which David R. Farmer, J., and Holly M. Kirby, J., joined.

Darrell J. O'Neal, Memphis, TN, attorney for the appellant, Larry Echols

Bruce A. McMullen, Gabriel P. McGaha, Memphis, TN, attorneys for the appellee, City of Memphis Civil Service Commission

**OPINION**

## I. FACTS & PROCEDURAL HISTORY

Sergeant Larry Echols was employed by the Memphis Police Department for approximately twenty years prior to his termination in 2007. Sergeant Echols was terminated based upon his involvement with a private security company known as "Peace Security," which provided security guard services at local Kroger grocery stores.[1] Sergeant Echols' secondary employment placed him in violation of the following Memphis Police Department Policies and Procedures:

> D. No employee may engage in any Additional Employment or business venture unless and until the Director of Police Services or his designee has approved that employment in writing.
>
> . . .
>
> G. No Department employee may own, operate, or manage a security guard company or private detective business, including a guard dog business.

Following an administrative hearing, Chief Dewey Betts determined that termination was warranted based upon Sergeant Echols' violation of DR-101 "Compliance with Regulations" due to his involvement with the security company, and his violation of DR-108 "Truthfulness" due to the statements Sergeant Echols made about his involvement with the security company during the departmental investigation. Sergeant Echols appealed his termination to the Civil Service Commission. Following a full hearing, the Commission sustained both charges against Sergeant Echols and upheld his termination.

Sergeant Echols then filed a petition for judicial review in chancery court. Before the chancery court, Sergeant Echols filed an application "to introduce additional evidence that he was treated differently than another officer charged with the same offense and was therefore denied equal protection of the law." On May 26, 2010, the chancery court entered an order denying Sergeant Echols' request to present additional evidence, but remanding the case to the Civil Service Commission for more detailed findings of fact and conclusions of law.

---

[1] The issues before us are narrow and do not involve any argument regarding the weight of the evidence. As such, we will not include a lengthy recitation of the underlying facts in this opinion.

On May 29, 2012, the Commission issued a supplemental decision with additional findings of fact and conclusions of law. The Commission found that Sergeant Echols held himself out as the owner of the private security business and rendered services for the company without MPD approval, in violation of departmental policies. The Commission also found that Sergeant Echols gave "evasive, questionable and inconsistent testimony" regarding his involvement with the company, and that his statements during the MPD investigation were "less than candid." The Commission found that both charges against Sergeant Echols should be sustained, and that termination was reasonable under the circumstances and in light of Sergeant Echols' disciplinary history.

Sergeant Echols again sought review before the chancery court. On December 11, 2012, the chancery court entered an order affirming the Commission's findings. The court found that the Commission's findings were supported by substantial and material evidence, and therefore, Sergeant Echols' petition for review should be denied. Sergeant Echols timely filed a notice of appeal to this Court.

## II.  ISSUES PRESENTED

On appeal, Sergeant Echols presents the following issues for review:
1. Whether the trial court erred when it refused to allow Mr. Echols the opportunity to present previously unavailable evidence of disparate treatment;
2. Whether the trial court failed to consider the alleged violation of Mr. Echols' constitutional right to equal protection when the City applied its policy in a disparate fashion; and
3. Whether the trial court erred when it stated that the City correctly terminated Mr. Echols when he was disciplined for conduct for which he was already serving a suspension.

For the following reasons, we affirm the decision of the chancery court.

## III.  STANDARD OF REVIEW

On appeal, we review the Commission's decision using the same standard of review used by the chancery court. *Davis v. Shelby County Sheriff's Dep't*, 278 S.W.3d 256, 264 (Tenn. 2009). Judicial review is governed by the Uniform Administrative Procedures Act, Tenn. Code Ann. § 4-5-322. *See* Tenn. Code Ann. § 27-9-114(b)(1).

(h) The court may affirm the decision of the agency or remand the case for further proceedings. The court may reverse or modify the decision if the rights of the petitioner have been prejudiced because the administrative findings,

-3-

inferences, conclusions or decisions are:

(1) In violation of constitutional or statutory provisions;
(2) In excess of the statutory authority of the agency;
(3) Made upon unlawful procedure;
(4) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or
(5)(A) Unsupported by evidence that is both substantial and material in the light of the entire record.
(B) In determining the substantiality of evidence, the court shall take into account whatever in the record fairly detracts from its weight, but the court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact.

Tenn. Code Ann. § 4-5-322.

## IV.  DISCUSSION

### A.  *Equal Protection*

We will consider Sergeant Echols' first two issues together.  He claims that the chancery court erred in refusing to allow him to present additional evidence of disparate treatment.  As a result, he argues that the chancery court failed to consider his constitutional right to equal protection.

Tennessee Code Annotated section 4-5-322(e) provides:
(e)  If, before the date set for hearing, application is made to the court for leave to present additional evidence, and it is shown to the satisfaction of the court that the additional evidence is material and that there were good reasons for failure to present it in the proceeding before the agency, the court may order that the additional evidence be taken before the agency upon conditions determined by the court. . . .

By its terms, the statute requires the petitioner to show "to the satisfaction of the court that the additional evidence is material[.]" *Id.*

Here, Sergeant Echols sought to introduce "evidence that he was treated differently than another officer charged with the same offense and was therefore denied equal protection of the law."  The officer who was allegedly similarly situated was Officer Guylon Greer, who, according to Sergeant Echols, received an oral reprimand for operating a trucking

business without prior approval, and years later, received a fifteen-day suspension for owning a security company. Sergeant Echols had been suspended on three previous occasions based upon his involvement with three other security companies, prior to his termination for his involvement with Peace Security. Nevertheless, Sergeant Echols argued that "[a]n employee appealing his termination is entitled to present evidence in support of a case of disparate treatment as a violation of the constitutional right to equal protection of the law."

We might agree with Sergeant Echols' assertion if there was any suggestion that Sergeant Echols was part of a suspect class that was singled out for disparate treatment by the City or the MPD. However, that was not Sergeant Echols' position. He simply argued that he was treated differently from Officer Greer, for no apparent reason. This was not a cognizable claim under the Equal Protection Clause.

In ***Engquist v. Oregon Department of Agriculture***, 553 U.S. 591, 594, 128 S.Ct. 2146, 2148 (2008), the United States Supreme Court was faced with deciding "whether a public employee can state a claim under the Equal Protection Clause by alleging that she was arbitrarily treated differently from other similarly situated employees, with no assertion that the different treatment was based on the employee's membership in any particular class." The employee in that case brought "what is known as a 'class-of-one' equal protection claim, alleging that she was fired not because she was a member of an identified class (unlike her race, sex, and national origin claims), but simply for 'arbitrary, vindictive, and malicious reasons.'" *Id.* at 595; 128 S.Ct. at 2149. The Court ultimately held that "such a 'class-of-one' theory of equal protection has no place in the public employment context." *Id.* at 594; 128 S.Ct. at 2148-49. The Court explained that "employment decisions are quite often subjective and individualized, resting on a wide array of factors that are difficult to articulate and quantify." *Id.* at 604; 128 S.Ct. at 2154. "To treat employees differently is not to classify them in a way that raises equal protection concerns. Rather, it is simply to exercise the broad discretion that typically characterizes the employer-employee relationship." *Id.* at 605; 128 S.Ct. at 2155. The Court reasoned that government offices could not function if every employment decision became a constitutional matter. *Id.* at 607; 128 S.Ct. at 2156. Likewise, "[t]he federal court is not the appropriate forum in which to review the multitude of personnel decisions that are made daily by public agencies." *Id.* at 609; 128 S.Ct. at 2157. In short, the Court concluded that public employees will typically have a variety of protections from just the sort of arbitrary personnel actions at issue, "but the Equal Protection Clause is not one of them."[2] *Id.*

---

[2] The Court clarified, "Of course, that is not to say that the Equal Protection Clause, like other constitutional provisions, does not apply to public employers. Indeed, our cases make clear that the Equal Protection Clause is implicated when the government makes class-based decisions in the employment (continued...)

Because Sergeant Echols only argued that he was treated differently from Officer Greer, his equal protection claim was destined to fail. *See, e.g.*, **Hines v. Town of Vonore**, 912 F. Supp. 2d 628, 649 (E.D. Tenn. 2012) (rejecting a police officer's equal protection claim, in light of the *Engquist* decision, where he did not assert that he was a member of a protected class, but merely argued that he was "intentionally treated differently" from other officers). Therefore, the additional evidence that Sergeant Echols sought to introduce was not "material," and we find no error in the trial court's decision to deny the request to introduce it.[3] *See* **Jones v. Bureau of TennCare**, 94 S.W.3d 495, 507 (Tenn. Ct. App. 2002) (explaining that evidence which, even if considered, would have no bearing on the outcome of the matter is not "material" evidence).

### B.  Sergeant Echols' Suspension

Prior to his termination, Sergeant Echols had been suspended on three previous occasions based upon his involvement with various security companies. Most recently, on October 27, 2006, Sergeant Echols was suspended for sixty days due to his admitted involvement with a security company called T-Tech. In February 2007, he was summoned to appear at the investigational services bureau and questioned regarding his involvement with Peace Security, with which he had been involved in 2004. At the time when he was questioned about Peace Security, Sergeant Echols had not yet returned to work from his prior sixty-day suspension, because he subsequently went on sick leave. Sergeant Echols was ultimately terminated in March 2007. He argues on appeal that because he had not committed any new offenses since his most recent suspension, his punishment for violation of the same disciplinary rules was "unfair and improper" and "tantamount to double jeopardy." The only authority Sergeant Echols cites in support of his argument is **Cope v. Tenn. Civ. Serv. Comm'n**, No. M2008-01229-COA-R3-CV, 2009 WL 1635140, at *6 (Tenn. Ct. App. June 10, 2009), which involved a highway patrolman who argued that he was disciplined on two occasions, years apart, for his unprofessional conduct during a single

---

[2](...continued)
context, treating distinct groups of individuals categorically differently." *Id.* at 605; 128 S.Ct. at 2155.

[3]  Sergeant Echols argues on appeal that two officers were disciplined less harshly than he was. From our review of the record, it appears that Sergeant Echols only sought to introduce evidence regarding one officer before the chancery court, and that was in the context of his first petition for review, before the chancery court remanded the matter to the Civil Service Commission for additional findings. Because that order was not appealed, it appears that the trial court's order became final, and the court's ruling on the request to introduce additional evidence is beyond the scope of our review on appeal. Sergeant Echols' attorney asked certain witnesses questions about the second officer during the hearing before the Commission, but it does not appear that he sought to introduce additional evidence about him before the chancery court. In any event, for the sake of argument, we have considered the equal protection issue and found it to be without merit, for the reasons stated above.

traffic stop. The Court stated:

> While we have found no Tennessee law, rule or regulation that prohibits a civil service employee from being disciplined twice for the same event, principles of fundamental fairness and the fact that a civil service employee like Mr. Cope can only be terminated for cause, see Tenn. Comp. R. & Regs. 1120-10-.02, demonstrates to us that such an employee should not be punished twice for the same conduct. Such a conclusion is supported by several other jurisdictions. See *Ladnier v. City of Biloxi*, 749 So.2d 139 (Miss. Ct. App. 1999) (ruling that if a civil servant was disciplined once for certain misconduct, it follows that good cause would not then exist to sustain the employee's later discharge for the same event); *Lundy v. Univ. of New Orleans*, 728 So.2d 927 (La. Ct. App. 1 Cir.1999) (holding "each occasion of discipline by the appointing authority must be based upon previously undisciplined behavior, because an employee cannot be twice disciplined for a single dereliction"); *State Dep't. of Transp. v. State Career Serv. Comm'n*, 366 So.2d 473 (Fla. Dist. Ct. App. 1979) (ruling that disciplinary action administered to a public employee may not be increased at a later date nor may an agency discipline an employee twice for the same offense); *Rochon v. Rodriguez, Superintendent of Police, City of Chicago*, 293 Ill.App.3d 952, 228 Ill.Dec. 416, 689 N.E.2d 288, 292 (Ill. App. 1 Dist. 1997) (holding that "a probationary employee cannot be dismissed for a reason that has been the basis of a previous disciplinary sanction").

*Id.*[4] Sergeant Echols contends on appeal that he "was charged with the same conduct for which he had just been disciplined and based on events that occurred prior to the acts forming the basis for the 60 day suspension that he was serving." He argues, "According to *Cope*, Mr. Echols could only be penalized once for his conduct." We find this argument unconvincing.

Sergeant Echols' sixty-day suspension was based upon his involvement with T-Tech. His subsequent termination was based upon his involvement with an entirely different company, Peace Security, involving totally separate circumstances. The disciplinary record of the sixty-day suspension does not include any mention of Peace Security, as Sergeant Echols did not inform his superiors of his involvement with Peace Security during the previous proceedings. It is clear that his sixty-day suspension was based solely upon his dealings with T-Tech. We recognize that Sergeant Echols did not commit any new offenses

---

[4] The Court in *Cope* ultimately concluded that the trooper had not in fact been disciplined twice for the same event. *Id.* at *8.

in the few weeks that transpired after his sixty-day suspension ended, but that does not mean that Sergeant Echols received a "free pass" for any misconduct that occurred prior to his suspension that was still undiscovered. Likewise, Sergeant Echols' punishment for his involvement with T-Tech did not mean that he was exempt from punishment for "similar" violations involving other security companies.

The events giving rise to these two disciplinary proceedings were separate and distinct, and it is obvious that Sergeant Echols was not impermissibly "disciplined twice for the same event," as discussed in *Cope*. It does not offend the concept of "fundamental fairness" to discipline Sergeant Echols twice under these circumstances.

## V.   CONCLUSION

For the aforementioned reasons, the decision of the chancery court is hereby affirmed. Costs of this appeal are taxed to the appellant, Larry Echols, and his surety, for which execution may issue if necessary.

_____
ALAN  E. HIGHERS, P.J., W.S.