IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs July 3, 2017

ANTHONY D. HERRON, JR., v. TENNESSEE DEPARTMENT OF
HUMAN SERVICES, DIVISION OF REHABILITATION SERVICES

Appeal from the Chancery Court for Shelby County
No. CH-16-1211     Jim Kyle, Chancellor

—————————————————

No. W2017-00067-COA-R3-CV

—————————————————

Anthony D. Herron, Jr., a disabled army veteran, applied and was approved for vocational rehabilitation services through the Tennessee Department of Human Services, Division of Rehabilitation Services. During the course of developing a self-employment plan, the Division of Rehabilitation Services determined it had received insufficient information from Mr. Herron to merit further consideration of his self-employment plan. Mr. Herron administratively appealed, but after a hearing, the Department affirmed the decision of the Division of Rehabilitation Services. Mr. Herron then petitioned for judicial review in chancery court, which also affirmed the decision of the Division of Rehabilitation Services. Mr. Herron appeals. Upon review of the record, we affirm the judgment.

Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed

RICHARD H. DINKINS, J., delivered the opinion of the court, in which D. MICHAEL SWINEY, C.J., and J. STEVEN STAFFORD, P.J., W.S., joined.

Anthony Herron, Jr., Memphis, Tennessee, Pro Se.

Herbert H. Slatery, III, Attorney General and Reporter; Ellison M. Berryhill, Assistant Attorney General, for the appellee, Tennessee Department of Human Services.

OPINION

I.     FACTUAL AND PROCEDURAL HISTORY

Anthony D. Herron, Jr., a disabled army veteran, was determined by the Division of Rehabilitation Services ("the Division" or "DRS") of the Tennessee Department of Human Services ("the Department") to be eligible for vocational rehabilitation services in

September 2014; after the determination, Mr. Herron was required to develop, with the assistance of a counselor, an individualized plan for employment ("IPE"). His initial IPE anticipated that he would obtain employment as a flight instructor, and the Department agreed, *inter alia*, to provide tuition for flight training. *Herron v. Tennessee Department of Human Services*, No. W2016-01416-COA-R3-CV, 2017 WL 438626, at *2 (Tenn. Ct. App. Feb. 1, 2017).[1] The flight school ceased operations while he was enrolled, and Mr. Herron was unable to continue his training. *Id.* at *1.

Mr. Herron continued to pursue vocational rehabilitation services with the Department, and on December 7, 2015, with the assistance of his counselor Edgar Chism, Mr. Herron completed an Employment Needs Assessment ("ENA"). In the assessment, Mr. Chism stated that Mr. Herron was suited for self-employment and that financial barriers were the sole obstacles to his self-employment. Mr. Herron and Mr. Chism signed a Business Exploration Agreement ("BEA"), which outlined their respective responsibilities while exploring Mr. Herron's suitability for self-employment. The BEA stated that a business plan "must be approved in accordance with DRS requirements prior to the development of [an] Individualized Plan for Employment."

Mr. Herron established as an objective that he would open a business selling high-quality hair extensions. Mr. Chism put him in contact with the Service Core of Retired Executives, the Tennessee Business Enterprise Resource Office, the University of Memphis' Center for Entrepreneurship and Innovation, and the Small Business Association; Mr. Herron used these resources to create his feasibility/market analysis, business plan, and cash flow projection. Mr. Chism approved of Mr. Herron's analysis and plan, and concluded that self-employment was the "best employment objective" for Mr. Herron.[2] Mr. Chism then submitted the documents to George Wright, the Region 9

---

[1] This is Mr. Herron's second appeal. In the first appeal, Mr. Herron appealed the Department's suspension of flight training tuition payments due to his failure to submit progress reports to the Department. After an administrative hearing, the hearing officer found no error in the suspension of the tuition payments. Upon review the Shelby County Chancery Court upheld the actions of the Department, and this court affirmed. *Herron,* 2017 WL 438626 at *1.

[2] The Division is also tasked with developing procedures governing the provision of services under the Rehabilitation Act, pursuant to Tenn. Comp. R. & Reg. 1240-08-02-.04. Pursuant to this responsibility the Division has developed a Vocational Rehabilitation Program Procedures Manual ("the Manual"), the pertinent portion of which states:

> The self-employment process requires several sequential steps to reach the conclusion that self-employment is the best employment objective for the client and that VR will support the employment objective. Inform the client that each step must be completed satisfactorily and in sequence before an IPE for self-employment can be developed. Inform clients of the progress of each step during the process and of any delays in the process. The client cannot be instructed to complete a business plan until the appropriate step in the process is reached. Following PC determination and for clients in an open PC, the sequential steps include:

Supervisor of the Vocational Rehabilitation program, for review in accordance with the last step of the self-employment process.[3]

On January 14, 2016, Mr. Wright sent Mr. Herron an email, acknowledging receipt of the feasibility study and market analysis and stating the following, in pertinent part:

> I know that you plan a niche business with no competitors offering an identical service/product. But you have provided an extensive list of beauty shops, salons, and dealers in the proposed area that you will operate. Your market analysis needs to include those businesses that will directly compete with you by offering your potential customers similar products or services that would result in customer receiving an extension/weave. Who are the nearest competitors within a 15-20 mile radius (30-40 minute drive) that would be considered major competitors?
>
> Regarding #3 under Feasibility/Market Analysis "required income," we need to have information about anticipated 1st year wages/earnings for similar business start-ups in the SW Tennessee area as this information is critical to further consideration. The area chamber of commerce or your SCORE advisor may be able to help you establish this information.

Mr. Herron responded by return email within the hour, stating that he had not been able to locate businesses that sold only hair extensions, that wage information had been previously provided, and that he had provided the "most up to date information."

On January 29, 2016, Mr. Wright sent Mr. Herron a letter explaining that the feasibility study and market analysis listed a customer base that was much larger than Mr. Herron's top competitor, that the proposal failed to explain "how the start-up business would attract more than twice as many customer purchases (300-360) per month" than

---

a. Determining the client's suitability for self-employment;
b. Reviewing and completing a Business Exploration Agreement;
c. Completing a Feasibility/Market Analysis;
d. Complete a business plan and cash flow projection;
e. When warranted, review and approval by VR State Office or DHS Legal; and
f. Approval of the vocational rehabilitation Regional Supervisor.

[3] The procedures manual provides, and Mr. Wright confirmed, that the Regional Supervisor reviews self-employment proposals to ensure that all steps have been satisfactorily and sequentially followed, determines whether self-employment is the best employment objective, and decides whether the Vocational Rehabilitation program will support a self-employment objective.

Mr. Herron's competition, and that there was lack of sufficient detail concerning how Mr. Herron would compete with online retailers. The letter concluded:

> At this point it is my decision that the amended market analysis submitted on January 17, 2016, does not adequately address concerns regarding market saturation and likely competition from salons, storefronts, and online businesses. There is also insufficient information to support the likelihood of 334 sales per month as stated in this analysis. I must inform you that the information provided is insufficient to merit further consideration/discussion of the self-employment plan.

Mr. Herron submitted a revised feasibility/market analysis on February 22, and on March 10, Mr. Wright responded by letter, stating in pertinent part:

> The revised market analysis which you provided on February 22, 2015 [sic] has been reviewed. The data included in this analysis is largely unchanged. There are slight revisions to the number of customers anticipated per day (12 revised upward to 14) and per two hour block (3 revised upward to 3.5) though the annual numbers of expected customers, 300-360 and 334 respectively, is unchanged. An annual sales figure estimate has been added to the paragraph addressing expected sales.
>
> The remaining data is consistent with that which has previously been provided by you, discussed and reviewed. Prior decisions regarding the market feasibility study are unchanged based on this submission.

Mr. Herron initiated an administrative appeal on April 20, 2016. A hearing officer was assigned, and a pre-hearing conference was held May 11, 2016. The parties agreed at the conference that there were three issues raised in the appeal: (1) whether Mr. Herron properly completed the several steps required in the self-employment process to conclude that self-employment was the best objective for Mr. Herron; (2) whether Mr. Wright should have agreed to support Mr. Herron's self-employment objective given Mr. Chism's determination that self-employment was the best objective for Mr. Herron; and, (3) whether the feasibility/market analysis adequately explained the operation of the proposed business.

The hearing was held on June 2, 2016, at which Mr. Herron testified, as well as Mr. Chism and Mr. Wright. On June 8, the hearing officer issued an Initial Order, holding as follows:

> [Mr. Herron] failed to provide the necessary information for the Regional Supervisor to determine whether self-employment was the best objective for Mr. Herron. The Regional Supervisor properly reviewed Mr. Herron's

4

[feasibility/market analysis] and requested additional information regarding market saturation and competitors. The Hearing Officer concludes that the Regional Supervisor had the authority to determine the [feasibility/market analysis] was not properly completed and to end the consideration of Mr. Herron's self-employment plan.  The actions of the DRS are upheld.

Mr. Herron sought review of the Initial Order with the Commissioner's Designee, and on July 18, 2016, the Commissioner's Designee entered a Final Order:

After a thorough review of the record I concur with the decision of the Hearing Officer and find that Mr. Herron's plan for self-employment was properly denied.  No additional evidence or argument that would alter or reverse the Initial Order, nor good cause to set aside the Initial Order, was included in the Petition for Review of the Initial Order.  Therefore, the Petition for Review of the Initial Order is denied.

Mr. Herron filed a Petition for Judicial Review in Chancery Court on July 21 under Tennessee Code Annotated section 4-5-322.  The court granted review and affirmed the Department's decision:

Pursuant to Tenn. Code Ann. § 4-5-322, this Court shall not substitute its judgment for that of the agency.  Confined to the record, this Court may "reverse or modify the decision if the rights of Mr. Herron have been prejudiced because the administrative findings, inferences, conclusions or decision are in violation of constitutional or statutory provisions, in excess of the statutory authority of the agency, made upon unlawful procedure, arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion, or unsupported by evidence that is both substantial and material in light of the entire record." T.C.A. § 4-5-322. Based upon this standard, the Court affirms the Department's decision. Specifically, the Court finds that there was a reasonable basis for the Department to make its decision to deny Mr. Herron's self-employment plan based upon the over estimation of sales that would have been made for a certain period of time within the geographical area to which the business was going to serve. The Court also finds that the Department's administrative decision in this matter did not exceed the Department's statutory authority, w[as] not an abuse, unwarranted exercise of discretion, arbitrary, capricious, or made upon unlawful procedure. Further, for those reasons, the rights of Mr. Herron have not been prejudiced.

Mr. Herron timely appeals.

## II.    STANDARD OF REVIEW

Judicial review of decisions of commissions is governed by the narrow standard contained in Tennessee Code Annotated section 4-5-322(h). *Wayne County v. Tennessee Solid Waste Disposal Control Bd.*, 756 S.W.2d 274, 279 (Tenn. Ct. App. 1988).  A court may modify or reverse the decision of the commission only if Mr. Herron's rights have been prejudiced because the administrative findings, inferences, conclusions or decisions are:

> 1)  In violation of constitutional or statutory provisions;
> 2)  In excess of the statutory authority of the agency;
> 3)  Made upon unlawful procedure;
> 4) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or
> 5) Unsupported by evidence which is both substantial and material in the light of the entire record.

Tenn. Code Ann. § 4-5-322(h). "In determining the substantiality of evidence, the court shall take into account whatever in the record fairly detracts from its weight, but the court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact." *Id.* at § 4-5-322(h)(5)(B).

When this court reviews the decision of the court below, we are to determine "whether the [t]rial [c]ourt properly applied the standard of review found at Tennessee Code Annotated section 4-5-322(h)." *Jones v. Bureau of TennCare*, 94 S.W.3d 495, 504 (Tenn. Ct. App. 2002) (citing *Papachristou v. Univ. of Tenn.,* 29, S.W.3d 487, 490 (Tenn. Ct. App. 2000)).

## III.    ANALYSIS

Mr. Herron argues that he complied with all of the DRS's procedures and properly replied to Mr. Wright's request for more information, and the Division therefore improperly denied his business proposal.

Our review in this case is limited to whether the Department's decision was unsupported by material evidence or was arbitrary and capricious.  The Vocational Rehabilitation Program Procedures Manual requires individuals interested in the self-employment objective to complete all steps before an individualized plan for self-employment can be developed; the manual also provides that the Regional Supervisor reviews self-employment proposals in order to ensure that all steps have been followed, to confirm self-employment is the "best employment objective," and to decide whether the Vocational Rehabilitation Program will support a self-employment objective.  While Mr. Herron adequately completed some of the steps, he was put on notice by Mr. Wright

6

that he had failed to provide all necessary information for the Regional Supervisor to determine whether self-employment was the "best objective" for Mr. Herron; Mr. Wright notified Mr. Herron of three specific deficiencies in his feasibility and market analysis, and asked him to supplement his analysis to remedy those deficiencies. Mr. Herron failed to resolve those deficiencies by supplementing his analysis with the requested information. Without the requested information, Mr. Wright was left without adequate information on which to make a determination that self-employment was the best employment objective for Mr. Herron and that the Vocational Rehabilitation program could support a self-employment objective.

The agency's finding that Mr. Wright, as Regional Supervisor, had the authority to determine that the feasibility/market analysis was not properly completed and to end the consideration of Mr. Herron's self-employment plan is supported by the record. Mr. Wright's request for additional information from Mr. Herron was within the scope of his authority in implementing the vocational rehabilitation program. Mr. Herron provided some additional information, which was reviewed and deemed insufficient by Mr. Wright; upon that basis his proposal was denied. After review of the administrative record, we conclude that it contains substantial and material evidence supporting the decision, and the decision was not arbitrary and capricious. We also conclude that, in its decision, the trial court properly applied the standard of review at Tennessee Code Annotated section 4-5-322 to the Department's decision.

## IV.    CONCLUSION

For the foregoing reasons, we affirm the judgment of the chancery court.

_____
RICHARD H. DINKINS, JUDGE