IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
May 11, 2005 Session

CARL ROBERSON, ET AL. v. MOTION INDUSTRIES, INC., ET AL.

Appeal from the Circuit Court for Hamilton County
No. 02C701     W. Neil Thomas, III, Judge

No. E2004-02310-COA-R3-CV - FILED JULY 7, 2005

The jury returned a verdict in this car wreck lawsuit for Carl and Vicki Roberson ("Plaintiffs") in the amount of $900,000. However, the jury assessed 38% of the fault to Carl Roberson, thereby reducing the total verdict to $558,000 under comparative fault principles. On appeal, Plaintiffs claim the Trial Court erred when it denied their motion for a directed verdict made at the close of proof and in their Rule 50.02 motion. In their motion for directed verdict, Plaintiffs argued there was no material evidence to support defendant Motion Industries' claim that Mr. Roberson was guilty of comparative fault. The Trial Court denied the motion and allowed the jury to decide the comparative fault issue. Thereafter, Plaintiffs filed a motion for new trial which the Trial Court denied after specifically approving the amount of damages awarded by the jury as well as the jury's allocation of fault. Plaintiffs appeal claiming the Trial Court erred when it denied their motion for directed verdict. We affirm.

Tenn. R. App. P. 3 Appeal as of Right; Judgment of the
Circuit Court Affirmed; Case Remanded

D. MICHAEL SWINEY, J., delivered the opinion of the court, in which SHARON G. LEE, J., and WILLIAM H. INMAN, SR. J., joined.

Richard P. Jahn, Jr., Chattanooga, Tennessee, for the Appellants Carl and Vicki Roberson.

Douglas M. Campbell, Chattanooga, Tennessee, for the Appellee Motion Industries, Inc.

## OPINION

## <u>Background</u>

In April of 2002, Plaintiffs filed suit against Motion Industries, Inc., and Travis G. Weathers ("Weathers")[1]. According to the complaint, in June of 2001, Weathers was driving a truck while in the course and scope of his employment with Motion Industries. Weathers apparently had stopped at a stop sign at the intersection of Broad Street and Glenview Street in Chattanooga, but then proceeded to pull out into traffic on Broad Street striking the automobile driven by Mr. Roberson. Plaintiffs claim the accident caused serious injuries to Mr. Roberson's lower back and after conservative medical treatment failed, Mr. Roberson underwent a spinal fusion at which time "[s]teel rods, wire cages and autogenous bone grafts were used to fuse three of his lower vertebraes." Plaintiffs' claims are based on negligence and negligence *per se*. Mr. Roberson initially sought compensatory damages totaling $2,000,000, and Mrs. Roberson sought $400,000 in damages for loss of consortium. Plaintiffs later amended the complaint to increase Mr. Roberson's *ad damnum* to $3,400,000.

Motion Industries answered the complaint and generally denied any liability to Plaintiffs. Motion Industries asserted, among other things, that Mr. Roberson's comparative fault was the proximate cause of the accident and his resulting injuries.[2]

Plaintiffs claim on appeal that the proof at trial showed Mr. Roberson incurred medical expenses totaling $212,089. Mr. Roberson also offered proof that his past and future lost wages based upon his work life expectancy of 7.11 years totaled $410,000. Mr. Roberson's past and future lost wages based upon a retirement age of 65 totaled $499,244. Other proof regarding Mr. Roberson's claimed damages included expenses for future medical care totaling $154,471, and damages for past and future loss of "value of household services" totaling $85,053. Thus, according to Plaintiffs, Mr. Roberson incurred actual damages for past and future lost wages, past and future medical care, and loss of "value of household services" in the range of between approximately $862,000 and $951,000, depending on whether Mr. Roberson quit working in 7.11 years or retired at age 65.[3]

---

[1] Plaintiffs voluntarily dismissed their claims against Weathers prior to trial.

[2] There was a dispute prior to trial over whether Motion Industries properly raised comparative fault as a defense. This dispute apparently was resolved in favor of Motion Industries and the issue of whether comparative fault was properly pled as a defense is not at issue on appeal.

[3] These figures were obtained from an economic consultant's report which Plaintiffs entered as an exhibit at trial. We have provided these figures to show what Plaintiffs claim to be the actual damages resulting from the automobile accident. Whether Plaintiffs proved damages consistent with the jury's verdict is not directly at issue on appeal. Accordingly, our mention of the figures contained in the economic consultant's report should not be interpreted as a conclusion that it accurately reflects Mr. Roberson's actual damages or that the jury was in any way required to accept the contents of the report.

At the close of proof at trial, Plaintiffs moved for a directed verdict on the issue of Mr. Roberson's alleged comparative fault. The Trial Court denied the motion and the jury eventually returned a verdict in favor of Mr. Roberson in the amount of $880,000, and in favor of Mrs. Roberson in the amount of $20,000. The jury also found, however, that Mr. Roberson was 38% at fault for the accident. The Trial Court then reduced Plaintiffs' overall verdict by 38% consistent with comparative fault principles. The end result was a verdict for Mr. Roberson totaling $545,600, and a verdict totaling $12,400 for Mrs. Roberson.

Following entry of judgment, Plaintiffs filed a Motion for Directed Verdict and Additur or New Trial. The Trial Court denied this motion and "specifically approved" the amount of damages assessed by the jury as well as the jury's allocation of fault. Plaintiffs appeal, claiming the Trial Court erred when it refused to direct a verdict in their favor as to Mr. Roberson's alleged comparative fault. Plaintiffs ask this Court to hold that the Trial Court erred in not granting their motion for a directed verdict and by not setting aside the jury's finding of comparative fault. Plaintiffs ask this Court to restore the entire jury verdict of $900,000 in their favor.

## Discussion

Our standard of review is whether there is any material evidence in the record to support the Trial Court's denial of Plaintiffs' motion for directed verdict. *See Stooksbury v. American Nat. Prop. and Cas. Co.*, 126 S.W.3d 505 (Tenn. Ct. App. 2003). One of the many issues in *Stooksbury* was whether the trial court erred when it failed to direct a verdict in the defendant's favor. In resolving this issue, we stated:

> In deciding whether a trial court was correct in granting or denying a motion for directed verdict, an appellate court cannot weigh the evidence.
>
> > Rather, it must take the strongest legitimate view of the evidence in favor of the plaintiff, indulging in all reasonable inferences in his favor, and disregarding any evidence to the contrary. The trial judge's action [granting a motion for directed verdict] may be sustained only if there is no material evidence in the record that would support a verdict for the plaintiff, under any of the theories that he has advanced.
>
> *Wharton Transport Corp. v. Bridges*, 606 S.W.2d 521, 525 (Tenn. 1980) (quoting *Cecil v. Hardin*, 575 S.W.2d 268, 271 (Tenn.1978)).
>
> > To resolve this issue, we must determine if the Trial Court was correct when it overruled Defendant's motion for directed verdict, thereby implicitly concluding there was material evidence that would support a verdict for Plaintiff.

*Stooksbury*, 126 S.W.3d at 516. In the present case, we likewise must determine if the Trial Court correctly overruled Plaintiffs' motion for directed verdict, thereby implicitly finding that there was material evidence that would support a jury verdict finding comparative fault on the part of Mr. Roberson.[4]

Although the trial lasted six days, only evidence pertaining to how the accident occurred is relevant on appeal. Mr. Roberson testified that on the day of the accident, he was on his way home and was driving down Broad Street in Chattanooga. Mr. Roberson explained that the intersection of Broad Street and Glenview Street is approximately three hundred feet past a traffic light at Broad Street and 33rd Street. Mr. Roberson testified he was proceeding west bound on Broad Street. He had just crossed over some railroad tracks, was traveling 20 to 25 m.p.h., and was in the process of "building my speed back up." According to Mr. Roberson:

> I was traveling down this point. All this traffic was around me. There was a big something, big truck or big bus. I wasn't looking over at that side because there was a lot of traffic. I was just looking straight ahead. I was traveling this way. Then I could see a white … pickup truck. Then I kept going and then I seen in the corner of my eye the white coming at me…. I hit my gas and tried to get over into this center lane. The truck hit me and I knew I wasn't doing any good with the gas.

The impact caused Mr. Roberson's car to spin around and his car ended up in the inside lane of northbound traffic. According to Mr. Roberson, shortly after the accident Weathers told him that "he didn't see me and he was sorry that he hit me."

On cross-examination, Mr. Roberson acknowledged that the last traffic light he might have stopped at was at 26th Street, about .8 of a mile from the scene of the accident. Not far past this last traffic light, however, is the railroad track which Mr. Roberson stated he crossed at about 20 to 25 m.p.h. After crossing the railroad track, Mr. Roberson began to accelerate. Mr. Roberson stated that the speed limit on Broad Street is 35 m.p.h. Mr. Roberson denied that he was speeding when the accident occurred.

Weathers testified that on the day of the accident, he was stopped at the stop sign on Glenview Street for one or two minutes before he proceeded to pull out onto Broad Street. Weathers stated that he could see down Broad Street to the railroad tracks which were over three hundred feet away from Glenview Street. Weathers testified that there was a garbage truck traveling down Broad

---

[4] Our analysis would be identical if we were reviewing the jury's verdict assessing 38% comparative fault to Mr. Roberson. Jury verdicts also are reviewed utilizing the material evidence standard. *See* Tenn. R. App. P. 13(d) ("Findings of fact by a jury in civil actions shall be set aside only if there is no material evidence to support the verdict."). Plaintiffs indeed have an uphill battle given that twelve jurors believed by a preponderance of the evidence that Mr. Roberson was 38% at fault, and the Trial Court concluded there was material evidence to support that particular finding when Plaintiffs' post-trial motion was denied.

Street in the outer lane approaching Glenview Street. Weathers did not see any vehicles in the lane next to the garbage truck or any vehicles behind the garbage truck. Weathers stated that the garbage truck then turned onto Glenview Street and, as it was turning, Weathers looked both ways and after seeing no other vehicles approaching, proceeded to pull out onto Broad Street. Weathers stated he was traveling about 2 m.p.h. when the collision occurred. After the accident, Weathers apologized to Mr. Roberson and stated that he did not see Mr. Roberson's vehicle. Although Weathers could not state how fast Mr. Roberson was traveling, he stated that he "had to be coming down through there pretty good to spin around a couple of times." In short, the jurors heard proof through Weathers' testimony that they could construe to show that in the time it took Weathers to pull into the intersection, Mr. Roberson's vehicle traveled from beyond the railroad tracks to the intersection, a distance of three hundred plus feet.

As previously noted, at the close of the evidence Plaintiffs moved for a directed verdict on the issue of comparative fault. In response, Motion Industries argued that Weathers testified he could see to the railroad tracks from Glenview Street and there was no vehicle in either oncoming lane other than the garbage truck. Counsel argued that "the way I think this accident happened, the way I'm going to argue it, that plaintiff has to be in the far outside lane and has to be going 50 to 60. That's the only way to explain how [Weathers] doesn't see him." In response, the Trial Court stated that it would "let you argue it. I don't know that the jury will buy it." During closing arguments, Motion Industries presented the above argument to the jury, stating:

> I think the only way their testimony makes sense … is if Carl Roberson is in that outside lane going between 50 and 60 miles an hour. He hasn't stopped in 8/10 of a mile, he's on his way home.… [I]f you think about the dimensions, the distances involved, look at the photographs of the scene, the only explanation that explains this, why Travis Weathers could not see him, although he stopped and looked, and how they got to the middle of Broad Street at the same time is if Carl Roberson is coming shooting down Broad Street.…

One of Plaintiffs' primary arguments on appeal is that, as a matter of law, Mr. Roberson's alleged excessive speed on the through street could not have been the proximate cause of the accident. Plaintiffs rely on *Tennessee Trailways, Inc. v. Ervin*, 438 S.W.2d 733 (Tenn. 1969) and similar cases. In *Tennessee Trailways*, our Supreme Court stated:

> The record in the instant case leaves no doubt but that plaintiff's intestate rode his motorcycle up to the intersection, either hesitated or stopped, and, with the bus in unobstructed view, suddenly and abruptly crossed the highway into the northbound lane to the point of collision. It becomes too clear for argument that the asserted differential in the bus' speed simply could not be a realistic proximate cause of the accident. In the fact of uncontroverted testimony showing that plaintiff's intestate suddenly rode into the path of the

oncoming bus, whether defendant's bus was traveling at 73.5 or at 63 miles per hour becomes insignificant. It is plain that the immediate cause of the collision was not the speed of the bus; but apparently the sudden and heedless entry of plaintiff's intestate onto the north side of the highway.

*Id*. at 735. As the passengers on the bus testified, the motorcycle driver's entry onto the highway was "sudden" and "right in front of" the bus. *Id*.

In our opinion, *Tennessee Trailways* would be on point in the present case if Weathers' vehicle had collided with the garbage truck which Weathers clearly saw, or if Roberson's vehicle had been visible when Weathers proceeded onto Broad Street. However, Weathers testified that when he looked down Broad Street, the only visible vehicle was the garbage truck. If the jury credited Weathers' testimony, which apparently it did, then Weathers cannot be said to have pulled out in front of a vehicle which was in his unobstructed view.

Other cases relied upon by Plaintiffs to support their argument that Mr. Roberson's claimed excessive speed could not be the proximate cause of the accident are equally as distinguishable as *Tennessee Trailways*. For example, in *Whaley v. Wolfenbarger*, No. E1999-02518-COA-R3-CV, 2000 Tenn. App. LEXIS 54 (Tenn. Ct. App. Jan. 28, 2000), the defendant did not see a stop sign and proceeded directly into an intersection striking a vehicle being driven by the plaintiff's husband. We affirmed the trial court's granting of a directed verdict to plaintiff on the issue of comparative fault, finding there was "no evidence of any kind showing or tending to show that the speed of the Whaley's vehicle … contributed in any way to the accident." *Id*. at ** 4-5. Plaintiffs also cite *Bobo v. Gregory*, No. 03A01-9408-CV-00280, 1995 Tenn. App. LEXIS 28 (Tenn. Ct. App. Jan. 13, 1995), but in that case the defendant, believing that the plaintiff's vehicle was slowing down to stop, pulled out in front of the plaintiff's vehicle after seeing the plaintiff's vehicle only two or three car lengths away. *Id*. at *4.

Because there was evidence in the present case from which a jury could reasonably conclude that Mr. Roberson's vehicle was not yet in sight and therefore not visible when Weathers looked for oncoming traffic and that Weathers did not simply pull out in front of an observed vehicle, the above cases cited by Plaintiffs are in no way controlling on the comparative fault issue. Here the jury was presented with proof showing, if the jury believed that proof which it apparently did, that Weathers looked for oncoming traffic, that Weathers could see three hundred plus feet to the railroad tracks, that Mr. Roberson's vehicle simply was not yet in sight, that Weathers then began to pull out into the intersection, and that Mr. Roberson's vehicle covered the three hundred plus feet in the time it took Weathers to pull into the intersection where the collision occurred.

On appeal, we cannot re-weigh the evidence or otherwise determine where the preponderance of the evidence lies. If there is any material evidence to support the jury's verdict assessing 38% comparative fault to Mr. Roberson, the verdict must be sustained. In *Jones v. Bureau of TennCare*, 94 S.W.3d 495, 501 (Tenn. Ct. App. 2002), we observed that:

The term "substantial and material evidence" has been defined as "'such relevant evidence as a reasonable mind might accept to support a rational conclusion and such as to furnish a reasonably sound basis for the action under consideration.'" *Papachristou v. Univ. of Tennessee*, 29 S.W.3d 487, 490 (Tenn. Ct. App. 2000) (quoting *Clay Co. Manor, Inc. v. State*, 849 S.W.2d 755, 759 (Tenn. 1993)). This Court has also described it as requiring "'something less than a preponderance of the evidence ... but more than a scintilla or glimmer.'" *Gluck v. Civil Serv. Comm'n*, 15 S.W.3d 486, 490 (Tenn. Ct. App. 1999) (quoting *Wayne Co. v. State Solid Waste Disposal Control Bd.*, 756 S.W.2d 274, 280 (Tenn. Ct. App. 1988))....

*Jones*, 94 S.W.3d at 501.

After reviewing, in light of the directed verdict standard of review, all of the evidence presented at trial on this particular issue, we conclude that there was material evidence to support the jury's verdict that Mr. Roberson was comparatively at fault. Specifically, the jury was presented evidence that Weathers was stopped at the intersection, that he looked toward the railroad tracks some three hundred plus feet away, that Mr. Roberson's vehicle was not yet in site, that Weathers pulled into the intersection, and that Mr. Roberson's vehicle covered three hundred plus feet in the time it took Weathers to pull into the intersection. While the evidence of Mr. Roberson's comparative fault may well be less than a preponderance of the evidence on that issue, we believe it to be "more than a scintilla or glimmer." We note that Plaintiffs in this appeal argue only that there is no material evidence of any comparative fault by Mr. Roberson. Apparently because Plaintiffs do not wish a new trial, Plaintiffs do not take the position that if Mr. Roberson was somehow at fault, then the 38% comparative fault as found by the jury is too high and should be some amount less than 38% even if greater than zero percent. Accordingly, we affirm the judgment of the Trial Court in all respects.

### Conclusion

The Judgment of the Trial Court is affirmed, and this cause is remanded to the Trial Court for collection of the costs below. Costs on appeal are assessed to the Appellants, Carl and Vicki Roberson, and their surety.

_____
D. MICHAEL SWINEY, JUDGE