IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
March 4, 2005 Session

## YVONNE N. ROBERTSON v. TENNESSEE BOARD OF SOCIAL WORKER CERTIFICATION AND LICENSURE, ET AL.

**Appeal from the Chancery Court for Davidson County**
**No. 02-2869-II    Carol L. McCoy, Chancellor**

---

**No. M2004-00647-COA-R3-CV - Filed November 15, 2005**

---

The Tennessee Board of Social Worker Certification and Licensure appeals from the decision of the Chancery Court to set aside its disciplinary ruling revoking a licensed clinical social worker's license for two years for engaging in a dual relationship with a client. The Chancellor set aside the Board's ruling on the grounds the sanctions constituted an abuse of discretion and were arbitrary and capricious. We reverse the decision of the Chancery Court and reinstate the Board's order of revocation.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Reversed**

FRANK G. CLEMENT, JR., J., delivered the opinion of the court, in which WILLIAM B. CAIN, J., joined. PATRICIA J. COTTRELL, J., filed a dissenting opinion.

Paul G. Summers, Attorney General and Reporter; and Sara E. Sedgwick, Assistant Attorney General, for the appellant, Tennessee Board of Social Worker Certification and Licensure and Tennessee Department of Health.

Michael E. Terry, Nashville, Tennessee, for the appellee, Yvonne N. Robertson.

## OPINION

Prior to seeking licensure as a licensed clinical social worker, Yvonne Robertson worked in the health care field as a certified master social worker. She had been certified as such by the Tennessee Board of Social Worker Certification and Licensure since October of 1994. In 1996, Robertson sought to advance her career and economic status in the health care industry by making application to become a licensed clinical social worker, independent practitioner of social work, by examination. Robertson's application, however, and the right to take the requisite examination for licensure, were denied because of a 1982 felony conviction for three counts of forgery.[1] Robertson appealed the denial of her application. A contested evidentiary hearing was conducted after which

---

[1] Robertson was convicted on three counts of forging payroll checks.

the Board reversed the prior decision and approved Robertson's application "to sit for the licensure examination." Pursuant to the Board's order, entered February 26, 1997, Robertson took the examination, which she passed. As a result, Robertson was granted a Clinical Social Worker license in 1997.

In September of 1997, Robertson was employed to work in the Great Starts program at Child and Family, Inc., a nonprofit community agency providing in-patient and out-patient services for persons in need. Great Starts had three shelters and provided advocates for women in need of protection from abusive relationships. It also operated a residential treatment facility for persons with addictions and offered classes, group therapy, and transportation to Alcoholics Anonymous and Narcotics Anonymous.

In early 1998, a client, D.W.,[2] came to the Great Starts program. She was enrolled in the program, and Robertson was assigned as her individual, primary therapist. The client left the program shortly thereafter but returned in December 1998. When the client returned, a different social worker was assigned to be her individual, primary therapist, and Robertson was assigned to be her group therapist.

During the client's time at Great Starts, Robertson developed a personal relationship with the client, one of companionship and friendship that went beyond permissible professional boundaries. Dual relationships, as they are called, are expressly and strictly prohibited. Neither the social worker nor the client may become involved in the other's personal life. The duty is on the social worker to maintain a professional boundary to avoid possible adverse consequences to the client. Due to the likely adverse effect on the client, dual relationships are expressly proscribed as unethical conduct by a social worker in Tenn. Comp. R. & Reg. 1365-1-.13. Moreover, a clinical social worker's license may be revoked for such unethical conduct. Tenn. Code Ann. § 63-23-106(a).

The prohibition against dual relationships notwithstanding, Robertson developed a significant personal relationship with the client between July and October of 1999. They spent a great deal of time together on numerous occasions away from work over the four-month period. The meetings and activities that violated the dual relationship prohibition included the two of them attending sporting events in which Robertson's son participated, the client spending Christmas with Robertson and her family, and the client staying the night at Robertson's house on at least two occasions. Other prohibited activities that took place away from work included Robertson and the client going on walks together and attending Alcoholics Anonymous meetings together.

Robertson explained that she engaged in the extracurricular personal relationship with the client in an effort to help the client stay sober. Though perhaps well intended, the proscribed dual relationship constituted unethical conduct.

---

[2]The identity of D.W. is irrelevant to the issues; therefore, we shall refer to D.W. hereafter as the client.

Not unexpectedly, the personal relationship between Robertson and the client came to a tumultuous and tragic ending. The beginning of the end occurred when Robertson's supervisor observed Robertson with the client away from work.[3] Sometime thereafter, the supervisor discussed the matter with Robertson. Robertson had meetings with her supervisor and senior staff at Great Starts during which she admitted the relationship with the client, though she did not disclose the extent of the relationship. It was not until later, when the client more fully disclosed the relationship to the staff at Great Starts, that Robertson was forthcoming about the extent of the relationship.

Shortly after the supervisor discussed the matter with Robertson, Robertson informed the client their relationship was inappropriate and could not continue. The client took the news badly. Not only did the client become emotionally traumatized, she acted out by making threats against other staff members at Great Starts, including a threat to kill a staff member whom she believed reported the relationship. The termination of the dual relationship also produced a significant depression, one the client suffered for several months.

Robertson's dual relationship with the client was reported to the Tennessee Department of Health, Division of Health Related Boards, which investigated the matter. In November of 2001, the Department of Health initiated the proceedings at issue by serving a Notice of Charges on Robertson, informing her it was seeking suspension or revocation of her license. The Notice of Charges contained "Allegations of Fact" and "Allegations of Law." The Allegations of Fact included the specifics of the dual relationship and that Robertson's application for licensure was originally denied because of a 1982 criminal conviction and granted thereafter following a contested hearing; the 1982 criminal conviction, however, was not mentioned in the Allegations of Law.

A contested administrative hearing before the Tennessee Board of Social Worker Certification and Licensure was held on May 6, 2002. The Department of Health contended that Robertson violated patient-therapist boundaries and sought revocation of Robertson's license. Robertson admitted she violated the boundaries between patient and therapist. She also admitted her behavior caused harm to the client. She attributed this mistake to becoming too involved with the patient and losing sight of what was therapeutic. Robertson contended this was an isolated incident, that she had not violated the boundaries between patient and therapist on any other occasion, and having learned from this mistake she was now "hyper-vigilant" about boundaries. Robertson did not contest the violation, and she recognized that the Board would have to take some sort of disciplinary action.

Following closing arguments, the Board engaged in an open discussion of the case. Members of the Board expressed various opinions and made suggestions regarding the appropriate sanction. During this discussion, some Board members made reference to the initial denial of Robertson's application in 1996 and to the 1997 hearing. The Chair commented that Robertson had been before

---

[3]Robertson was having domestic problems and had to appear in court in Knox County, Tennessee. She had informed the client of her difficulties and the scheduled court hearing. The client, on her own initiative, appeared at the hearing to support her friend, Robertson. Robertson's supervisor was also in attendance.

the Board in the past. Another member addressed Robertson's felony conviction but expressed the opinion that the situation regarding the dual relationship should be viewed on its own merits. Another Board member expressed concern about this being her second time before the Board. The Chair also referenced the portion of the Board's 1997 order where the Board credited Robertson for being committed to upholding the professional standards in the practice of social work, though noting, "again, today she has admitted that she has violated ethical and professional standards."

Following the open discussion, the Board held that the dual relationship between Robertson and the client existed, the relationship was inappropriate, and the relationship harmed the client. Based upon these findings, the Board revoked Robertson's license as a clinical social worker for a period of two years, at the end of which Robertson could appear before the Board for consideration of reinstatement of her license. The Board also required that Robertson comply with continuing education requirements and complete twelve hours of ethics training.

Robertson sought relief from the Board's decision by filing a petition for judicial review of the Board's order.[4] Robertson complained that the Board's decision was erroneously based upon her 1982 felony conviction and that the sanction was so severe as to be arbitrary or capricious, an unwarranted exercise of the Board's discretion, and not supported by substantial and material evidence.

Following a hearing, the Chancellor set aside the decision of the Board, ruling that it could not uphold the Board's decision because the Board relied upon evidence that was "both immaterial and prejudicial" – referring to the Board's prior order granting Robertson permission to take the exam and Robertson's 1982 pre-licensure conviction for forgery – and the Board treated the 1982 conviction as "an additional charge/ethical violation" against Robertson. The Chancellor reasoned that an objective and reasonable fact finder could not concur with the Board's decision "to invoke the severest sanction possible – revoking Ms. Robertson's license – for the charged ethical violation, without basing the decision upon the pre-licensure conviction."[5]

The State appeals the decision to set aside the Board's order. It contends the Board was authorized to consider its records and the information contained therein; the Board did not treat the 1982 conviction as an additional charge; and the Chancellor applied an erroneous standard of review by substituting its judgment for that of the Board.

---

[4]Robertson additionally sought a stay of the Board's order pending judicial review. The Chancellor granted that stay. No appeal was taken from that decision.

[5]The Chancellor set aside the Board's decision and remanded the matter to the Board for a new hearing before a different panel and Administrative Law Judge. The Chancellor further ordered that all references to the 1982 conviction be redacted from all documents considered by the panel.

## STANDARD OF REVIEW

Judicial review of decisions of administrative agencies, when those agencies are acting within their area of specialized knowledge, experience, and expertise, is governed by the narrow standard contained in Tenn. Code Ann. § 4-5-322(h) rather than the broad standard of review used in other civil appeals. *Willamette Indus., Inc. v. Tennessee Assessment Appeals Comm'n,* 11 S.W.3d 142, 146 (Tenn. Ct. App.1999); *Wayne County* v. *Tenn. Solid Waste Disposal Control Bd.*, 756 S.W.2d 274, 279-280 (Tenn. Ct. App. 1988); *CF Indus. v. Tennessee Pub. Serv. Comm'n*, 599 S.W.2d 536, 540 (Tenn. 1980)); *Metropolitan Gov't of Nashville v. Shacklett*, 554 S.W.2d 601, 604 (Tenn. 1977).

The trial court may reverse or modify the decision of the agency if the petitioner's rights have been prejudiced because the administrative findings, inferences, conclusions or decisions are:

(1)     In violation of constitutional or statutory provisions;

(2)     In excess of the statutory authority of the agency;

(3)     Made upon unlawful procedure;

(4)     Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or

(5)     Unsupported by evidence which is both substantial and material in the light of the entire record.

Tenn. Code Ann. § 4-5-322(h)(1)-(5). The trial court, however, may not substitute its judgment concerning the weight of the evidence for that of the Board. *Jones v. Bureau of TennCare*, 94 S.W.3d 495, 501 (Tenn. Ct. App. 2002) (citing *Gluck v. Civil Serv. Comm'n*, 15 S.W.3d 486, 490). The same limitations apply to the appellate court. *See Humana of Tennessee v. Tennessee Health Facilities Comm'n*, 551 S.W.2d 664, 668 (Tenn. 1977) (holding the trial court, and this court, must review these matters pursuant to the narrower statutory criteria). Thus, when reviewing a trial court's review of an administrative agency's decision, this court is to determine "whether or not the trial court properly applied the . . . standard of review" found at Tenn. Code Ann. § 4-5-322(h). *Jones*, 94 S.W.3d at 501 (quoting *Papachristou v. Univ. of Tennessee,* 29 S.W.3d 487, 490 (Tenn. Ct. App. 2000)).

## ROBERTSON'S CONVICTION AND THE BOARD'S 1997 ORDER

The Chancellor ruled that it could not uphold the Board's decision because the Board relied upon its prior order and treated the 1982 conviction for forgery as "an additional charge/ethical violation" against Robertson. The prior order at issue is the Board's order from the 1997 contested hearing whereby the Board first denied and then granted Robertson permission to take the licensure examination. The State contends the Board did not treat the forgery conviction as an additional charge, and the Board was authorized to consider information contained in its records. Although we agree with the Chancellor that the 1982 conviction and 1997 order were of little if any relevance, it was not error for the Board to examine its previous order, and the record does not sustain the finding that the Board treated the conviction as an additional charge or ethical violation.

An administrative agency's review of its previous orders is not prohibited. To the contrary, Tennessee law permits an agency to take notice of "[t]he record of other proceedings." Tenn. Code Ann. § 4-5-313(6)(A)(ii). Moreover, Tennessee's Uniform Administrative Procedures Act expressly authorizes a more liberal protocol for the admission of evidence in a contested hearing than the Tennessee Rules of Evidence permit in a court proceeding. The Act provides that an administrative agency

> shall admit and give probative effect to evidence admissible in a court, and when necessary to ascertain facts not reasonably susceptible to proof under the rules of court, evidence not admissible thereunder may be admitted if it is of a type commonly relied upon by reasonably prudent men in the conduct of their affairs. The agency shall give effect to the rules of privilege recognized by law and to agency statutes protecting the confidentiality of certain records, and shall exclude evidence which in its judgment is irrelevant, immaterial or unduly repetitious.

Tenn. Code Ann. §4-5-313(1).

We also find it significant that Robertson was on notice that the 1997 order and the 1982 conviction would be addressed at the contested hearing;[6] however, Robertson never challenged the relevance or admissibility of the order or the conviction. She did not move to strike the 1997 order from the Notice and did not seek a motion in limine prior to the contested hearing. Moreover, during the contested hearing, she failed to object to the State's reference to the 1997 order or the 1982 convictions at the contested hearing. Instead of seeking to exclude the 1997 order and the 1982 convictions, Robertson's counsel discussed both matters in his opening statement to the Board and questioned Robertson about them upon direct examination.

It also appears the Chancellor misunderstood the Board's use of the information contained in the 1997 order, specifically the 1982 conviction. The Memorandum Opinion stated that "a witness may not be impeached by a prior conviction when more than 10 years have elapsed from the date of the witness's release from confinement." The Chancellor's interpretation of the rule of evidence is correct;[7] however, the record does not support the conclusion that followed, that the Board treated the felony as impeachment evidence. Instead, we find the Board merely considered the order, which referenced the felony, along with all other information in Robertson's file for purposes of determining the sanctions to be imposed for violating the prohibition against a social worker having a dual relationship with a client.

The Chancellor also found that the Board treated the information in the 1997 order, particularly the information pertaining to the 1982 conviction as "an additional charge/ethical

---

[6]The most obvious indication was the fact the 1997 order was attached to the Notice of Charges served on Robertson at the commencement of these proceedings.

[7]See Tenn. R. Evid. 609.

violation" against Robertson.[8] We respectfully disagree with this finding. Although the statutory provision governing social workers authorizes the Board to revoke a license for "conviction of a felony," Tenn. Code Ann. § 63-23-106(a)(12), Robertson's license was not revoked for the conviction of a felony. Although some Board members discussed the prior conviction in their deliberations, the Board did not conclude that Robertson's license should be revoked because she had a previous felony. While the 2002 order included a recitation of Robertson's history, including the initial denial of her licensure application because of "a criminal conviction in 1982,"[9] there was no mention of the 1997 order or the felony in the "Conclusions of Law" or "Reasons for the Decision."

The Board was authorized by statute to review its previous orders. Tenn. Code Ann. § 4-5-313(6)(A)(ii). Thus, the review of the Board's 1997 order and the information contained therein was not impermissible. Moreover, the discussion by some members of the Board of the 1997 order and the 1982 conviction does not lead us to the conclusion the Board made its decision based upon the matters discussed by some of its members. To the contrary, we must look to the order filed by the Board to ascertain the findings and conclusions of law that led to the decision. *Sierra Club v. Tennessee Dep't of Health & Env't*, No. 01-A-01-9203CH00131, 1992 WL 288870, at *2 (Tenn. Ct. App. October 16, 1992) (holding that statements made by individual board members during deliberations do not show as a matter of law that their decision was arbitrary and capricious, and that the board's order, not the discussion, is of greatest importance). Accordingly, individual views expressed by some Board members do not constitute the findings and conclusions of law by the Board. For these reasons, we are unable to conclude the Board treated the 1982 conviction as an additional charge or an additional ethical violation.

Therefore, the Board did not abuse its discretion by reviewing its records concerning Robertson, including the 1997 order and Robertson's 1982 conviction contained therein.

## THE SANCTION

The Notice of Charges filed by the State against Robertson contended that she engaged in unethical conduct by engaging in a dual relationship with the client and that her license should be revoked or suspended for such violation. Robertson did not contest the allegations. In fact, she admitted engaging in a four-month relationship with the client. She also admitted her conduct violated applicable rules and regulations and constituted unethical conduct. Because the underlying facts were not in dispute and Robertson admitted her conduct constituted unethical conduct, the only

---

[8]Tenn. Code Ann § 63-23-106, the statutory provision governing social workers, lists as a ground for revoking one's license "[c]onviction of a felony in the courts of this state or any other state, territory or country that, if committed in this state, would be a felony. . . ." Tenn. Code Ann. § 63-23-106(a)(12).

[9]The 2002 order stated, "Respondent's initial license was denied by the Board in 1996 on the basis of a criminal conviction in 1982. Respondent was notified of this decision by letter of July 30, 1996, and requested a contested case hearing. The Board heard a contested case on the matter on February 10, 1997, and granted Respondent a license."

issue for the Board was the appropriate sanctions to impose upon Robertson for her admitted unethical behavior.

The Chancellor found "if the Board did not consider the 1982 conviction in arriving at its decision, then its decision is arbitrary and capricious. . . ." The standard of arbitrary and capricious requires the reviewing court "to determine whether the administrative agency has made a clear error in judgment." *Jackson Mobilphone Co., Inc. v. Tennessee Pub. Serv. Comm'n*, 876 S.W.2d 106, 110,111 (Tenn. Ct. App. 1993) (citing *American Paper Inst. v. American Elec. Power Serv. Corp.*, 461 U.S. 402, 413, 103 S.Ct. 1921, 1928, 76 L.Ed.2d 22 (1983); *Citizens to Pres. Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416, 91 S.Ct. 814, 823-24, 28 L.Ed.2d 136 (1971)). Under the arbitrary and capricious standard, the Board's decision need only be supported by substantial and material evidence.[10] The only issue in the case at bar, however, is the severity of the sanctions imposed by the Board. Although we use the substantial and material evidence standard to review most administrative decisions, *see Estate of Street v. State Bd. of Equalization*, 812 S.W.2d 583, 585 (Tenn. Ct. App. 1990), a more restrictive standard of review applies when the issue is the propriety of the sanctions imposed by the administrative tribunal. *Mosley v. Tennessee Dep't of Commerce and Ins.*, 167 S.W.3d 308, 319 (Tenn. Ct. App. 2005).

The Supreme Court of Tennessee has stated the appropriate remedy is peculiarly within the discretion of the agency. *McClellan v. Bd. of Regents*, 921 S.W.2d 684, 693 (Tenn. 1996). Moreover, if grounds exist to affirm the procedures employed, the facts found, and the conclusions reached, the court should not interfere with the sanctions imposed by the board of an agency. *Id*.

> Determination of a sanction to be applied by an administrative agency, if within bounds of its lawful authority, is subject to very limited judicial review. *Kulkin v. Bergland*, 626 F.2d 181, 184 (1st Cir.1980). "The relations of remedy to policy is peculiarly a matter of administrative competence." *Butz v. Glover Livestock Commission Co.*, 411 U.S. 182, 185, 93 S.Ct. 1455, 1458, 36 L.Ed.2d 142 (1973) (quoting *American Power Co. v. S.E.C.*, 329 U.S. 90, 112, 67 S.Ct. 133, 146, 91 L.Ed. 103 (1946)). The reviewing court's function is only to "determine the validity of the questioned administrative action," not to review the sanctions. *Martin v. United States*, 459 F.2d at 302; *G.H. Miller & Co. v. United States*, 260 F.2d 286, 296 (7th Cir.1958) (en banc ) *cert. denied*, 359 U.S. 907, 79 S.Ct. 582, 3 L.Ed.2d 572 (1959).
> . . .
>
> Once the trial court confirmed that there were repeated violations of the law and regulations as determined by appellant, "the court's only reasoning task is to examine

---

[10] Substantial and material evidence merely requires that the evidence be such that a reasonable mind might accept it to support a rational conclusion. *Clay County Manor, Inc. v. State of Tennessee Dep't of Health and Env't*, 849 S.W.2d 755, 759 (Tenn. 1993) (citing *Southern Ry. Co. v. State Bd. of Equalization*, 682 S.W.2d 196, 199 (Tenn. 1984). The decision of the Board "need not be supported by a preponderance of the evidence." 876 S.W.2d at 111 (citing *Street v. State Bd. of Equalization*, 812 S.W.2d 583, 585 (Tenn. Ct. App. 1990)).

the sanction imposed in light of the administrative record to judge whether the agency properly applied the regulations, i.e., whether the sanction is 'unwarranted in law ... or without justification in fact. . . .' " *See Butz v. Glover Livestock Commission Co.*, 411 U.S. 182, 185-189, 93 S.Ct. 1455, 1457-1459, 36 L.Ed.2d 142 (1973) (other citations omitted).

*Woodard v. U.S.*, 725 F.2d 1072, 1077 (6th Cir. 1984).

The leading case addressing the restrictive standard of review of sanctions imposed by an administrative agency is *Butz v. Glover Livestock Commission Co.*, 411 U.S. 182, 93 S.Ct. 1455, 36 L.Ed.2d 142 (1973), wherein the court reasoned:

[ W]here Congress has entrusted an administrative agency with the responsibility of selecting the means of achieving the statutory policy "the relation of remedy to policy is peculiarly a matter for administrative competence." *American Power Co. v. SEC*, 329 U.S. 90, 112, 67 S.Ct. 133, 91 L.Ed. 103 (1946). Thus, the Secretary's choice of sanction was not to be overturned unless the Court of Appeals might find it "unwarranted in law or . . . without justification in fact. . . ." *Id.*, at 112-113, 67 S. Ct. 133 (other citations omitted).

*Butz*, 411 U.S. at 411.

This court has previously recognized the wisdom of *Butz* and applied the restrictive standard of review to affirm what may have appeared to some to be a relatively harsh sanction imposed by the Tennessee Department of Commerce and Insurance on a licensed insurance agent. *See Mosley*, 167 S.W.3d 308 (holding the trial court erred in modifying the sanctions imposed by the administrative tribunal). In *Mosley* we concluded that neither this court nor the Chancery Court is "permitted to weigh factual evidence and substitute our own judgment for that of the agency, even if the evidence could support a different determination than the agency reached." *Id.* at 318 (citing *Ware v. Green*, 984 S.W.2d 610, 614 (Tenn. Ct. App. 1998)). To the contrary, the role of the Chancery Court and this court when reviewing the sanction imposed by an agency is to examine the sanction "in light of the administrative record to judge whether the agency properly applied the regulations, *i.e.*, whether the sanction is 'unwarranted in law . . . or without justification in fact. . . .'" *Id.* at 319 (citing *Butz*, 411 U.S. at 185-186, 93 S.Ct. at 1458).[11]

"Every action taken by an agency must be grounded in an express statutory grant of authority or must arise by necessary implication from an express statutory grant of authority." *Sanifill of Tennessee, Inc. v. Tennessee Solid Waste Disposal Control Bd.*, 907 S.W.2d 807, 810 (Tenn. 1995)

---

[11]In *Mosley*, this court reviewed a trial court's decision to alter the sanction imposed by the administrative agency and reasoned, "[s]ince the chancellor found, and indeed Mr. Mosley conceded, that the facts as found by the ALJ were essentially true, the case narrows down to the propriety of the sanctions imposed on Mr. Mosley by the administrative tribunal." 167 S.W.3d at 317.

(citing *Tennessee Pub. Serv. Comm'n v. S. R.R. Co.*, 554 S.W.2d 612, 613 (Tenn. 1977); *Wayne County v. Solid Waste Disposal Control Bd.,* 756 S.W.2d 274, 282 (Tenn. Ct. App. 1988)). The Board was authorized to suspend or revoke any license, or to otherwise discipline a holder of a license who is found guilty of "[u]nprofessional or unethical conduct, or engaging in practices in connection with the practice of social work that are in violation of the standards of professional conduct, as defined in this section or prescribed by the rules of the board . . . ." Tenn. Code Ann. § 63-23-106(a)(7). Rules of the Tennessee State Board of Social Worker Certification and Licensure define unethical conduct, in pertinent part, as the failure to make every effort to "avoid dual relationships with clients and/or relationships which might impair independent professional judgment or increase the risk of client exploitation." Tenn. Comp. R. & Regs. 1365-1-.13(3)(j) (1986). Robertson admitted she engaged in a four-month dual relationship with the client. The Board found Robertson's relationship with the client constituted unethical conduct. Therefore, the Board's revocation of Robertson's license was not unwarranted in law because revocation for unethical conduct was within its statutory authority.

Having determined the sanction was warranted in law, we now turn to the question of whether the Board's decision was justified in fact. The Board made several significant findings of fact. The findings include: during the course of treatment of the client at Great Starts, Robertson violated patient/therapist boundaries and formed a dual relationship with the client; she invited the client to her home on numerous occasions; and the client went on camp-outs and attended ballgames and other functions with Robertson. The most significant finding of fact the Board made was that the client's progress in the program at Great Starts was delayed, and her mental health suffered as a result of Robertson's relationship with her.

The undisputed facts of this case establish that Robertson not only repeatedly violated the boundaries required of her as a licensed clinical social worker, she knew she was violating the boundaries, and the tragic consequences to the client that resulted from Robertson's violations were foreseeable. Although the sanction imposed by the Board was significant, the facts of the case are sufficient to lead a reasonable person to reach the same conclusions and sanction imposed by the Board.

Having examined the administrative record, we have concluded the sanction imposed was warranted in law and justified in fact. Accordingly, the judgment of the trial court is reversed, and this matter is remanded for the entry of an order reinstating the decision of the Board of Social Worker Certification and Licensure and for such other proceedings as may be necessary. Costs of appeal are assessed against Appellee, Yvonne N. Robertson.

_____
FRANK G. CLEMENT, JR., JUDGE