Jarral S. YOKLEY

v.

STATE BOARD OF EDUCATION.

Court of Appeals of Tennessee, Western Section, at Nashville.

Dec. 2, 2008 Session.

May 19, 2009.

Permission to Appeal Denied by Supreme Court Nov. 23, 2009.

Lorraine Wade, Nashville, Tennessee, for the Petitioner/Appellant Jarral S. Yokley.

Robert E. Cooper, Jr., Attorney General and Reporter, Michael E. Moore, Solicitor General, and Blind Akrawi, Assistant Attorney General, for the Respondent/Appellee State Board of Education.

## OPINION

HOLLY M. KIRBY, J., delivered the opinion of the Court, in which ALAN E. HIGHERS, P.J., W.S., and DAVID R. FARMER, J., joined.

This is a case involving the revocation of a teaching license. The petitioner teacher worked at a residential facility. The teacher was accused of abusing a teenager

who lived at the facility. The Tennessee Department of Children's Services classified the teacher as an "indicated perpetrator of child physical abuse." The teacher went on to teach at a municipal school. He was suspended from the school system for inappropriate touching and conversation with students. Ultimately, the teacher resigned from the municipal school system. Two years later, the State Board of Education initiated proceedings to revoke the teacher's teaching license and appointed an administrative law judge to hear the case. After several continuances of the hearing, the Board of Education filed a motion for summary judgment, arguing that the teacher's classification as an indicated perpetrator was undisputed and consequently, under rules issued by the Department of Children's Services, the Board was compelled to revoke the teacher's license. The teacher argued that summary judgment should not be granted because he was entitled to a hearing before revocation of his license. The administrative law judge granted the Board of Education's motion for summary judgment. This was made final by the full Board of Education. The teacher then sought judicial review of the license revocation in the trial court. The revocation was affirmed. The teacher appeals. We affirm, finding that summary judgment was proper.

### FACTS AND PROCEDURAL HISTORY

Petitioner/Appellant Jarral S. Yokley ("Yokley") was a teacher licensed by the State of Tennessee at all times pertinent to this case. In February 2002, Yokley was employed as a teacher at the Pioneer House, a residential facility. On February 8, 2002, Yokley was accused of abusing a teenager who resided at the Pioneer House. After conducting an investigation, the Department of Children's Services ("DCS") classified Yokley as an "indicated perpetrator of child physical abuse." A Final Administrative Order relating to

Yokley's classification was issued on September 19, 2002.

On November 8, 2002, Yokley filed a petition in the Chancery Court seeking judicial review of the administrative order on his classification as an "indicated perpetrator of child physical abuse." Yokley's petition was dismissed. The Chancery Court's decision to dismiss Yokley's petition was not appealed. Subsequently, Yokley was suspended from a teaching position with the Memphis City Schools effective March 5, 2003, following allegations of inappropriate touching and conversation with students. He resigned on April 1, 2003.

Several years later, on February 2, 2005, the State Board of Education ("Board") issued Yokley a "Notice of Hearing and Charges," directing him to appear at a hearing on March 7, 2005, before an administrative law judge ("ALJ") sitting on behalf of the Board. Yokley was notified that proof would be submitted at the hearing to determine whether there were sufficient grounds to revoke Yokley's teaching license. The hearing was continued several times.

On December 13, 2005, the Board filed a motion for summary judgment. In the motion, the Board argued that the "indicated perpetrator of child physical abuse" classification assigned to Yokley by DCS mandated revocation of Yokley's teaching license. The Board noted that Yokley had been given an opportunity to change or resolve the classification, which would have allowed the Board to pursue some recourse other than revocation of Yokley's license. However, because the classification remained intact, the Board argued that there were no genuine issues of material fact and that it was entitled to a judgment as a matter of law.

On January 24, 2006, Yokley filed his response to the Board's motion for sum-

mary judgment. Yokley argued that the case on revocation of his teaching license was not ripe for adjudication because he was seeking to have DCS reconsider his adverse classification determination. Yokley sought reconsideration of the DCS classification on the basis that he was not afforded an opportunity to properly appeal DCS's determination. Yokley asserted that his attorney at that time failed to properly plead and amend his petition to the Chancery Court for judicial review of the DCS classification. Therefore, Yokley contended, the Chancery Court's dismissal of his petition was not a decision on the merits. Yokley also argued that the DCS classification does not constitute the good cause required for revocation of his teaching license, that it would be inequitable to use a four-year-old classification to revoke his license, and that summary judgment is not appropriate in this matter because a hearing is required before his teaching license may be revoked.

In reply to Yokley's response, the Board noted that it had no authority to reverse the DCS classification of Yokley as an "indicated perpetrator." It argued that in light of the DCS classification assigned to Yokley, as the agency charged with issuing a teaching license to Yokley, the Board was required to assure Yokley's nonaccess to children. The only means available to do this, the Board maintained, was to revoke his teaching license.

In response to questions submitted by the ALJ, Yokley indicated that he, in a separate proceeding, was attempting to have his DCS classification reversed by pursuing a Rule 60 motion in the Chancery Court. The Rule 60 motion sought relief from the prior Chancery Court order that dismissed his petition for judicial review of the DCS classification. The Board acknowledged that a change in Yokley's DCS classification could affect the Board's intent to revoke Yokley's teaching license, so it agreed to continue the proceedings until Yokley's Rule 60 motion was heard by the Chancery Court. Yokley was ordered by the ALJ to file a status report on any ruling on the Rule 60 motion no later than April 28, 2006.

On April 25, 2006, the Chancery Court issued an order denying Yokley's Rule 60 motion. Contrary to the ALJ's order, however, Yokley did not file a copy of the Chancery Court's ruling with the ALJ. On June 20, 2006, the ALJ entered an initial order granting the Board's motion for summary judgment and revoking Yokley's teaching license. Yokley filed a notice of appeal to the Board. On August 31, 2006, the Board of Education voted unanimously to adopt the order of the ALJ as a final order, revoking Yokley's teaching license.

On October 30, 2006, Yokley filed a petition in the Davidson County Chancery Court for judicial review of the Board's decision. On February 29, 2008, the trial court affirmed the Board's final order. Yokley then filed a timely notice of appeal to this Court.

## ISSUES ON APPEAL AND STANDARD OF REVIEW

The only issue presented for review is whether the trial court erred in affirming the ALJ's grant of summary judgment in favor of the Board of Education. "When reviewing a trial court's review of an administrative agency's decision, this Court essentially is to determine 'whether or not the trial court properly applied the ... standard of review' found at [Tennessee Code Annotated] § 4–5–322(h)." *Jones v. Bureau of TennCare,* 94 S.W.3d 495, 501 (Tenn.Ct.App.2002) (quoting *Papachristou v. Univ. of Tenn.,* 29 S.W.3d 487, 490 (Tenn.Ct.App.2000)). Section 4–5–322(h) provides that the court may modify or reverse the decision of the agency only when the decision is:

(1) In violation of constitutional or statutory provisions;

(2) In excess of the statutory authority of the agency;

(3) Made upon unlawful procedure;

(4) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or

(5)(A) Unsupported by evidence that is both substantial and material in the light of the entire record.

(B) In determining the substantiality of evidence, the court shall take into account whatever in the record fairly detracts from its weight, but the court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact.

T.C.A. § 4–5–322(h) (2005). The same standard applies for both the trial court and the appellate court. *Terminix Int'l Co. v. Tenn. Dep't of Labor*, 77 S.W.3d 185, 191 (Tenn.Ct.App.2001).

### ANALYSIS

■ Yokley argues first that the ALJ's grant of summary judgment to the Board of Education was improper because the ALJ lacked the authority to grant a motion for summary judgment. *See* T.C.A. § 4–5–322(h)(2) ("[i]n excess of the statuto-

ry authority of the agency"). Yokley notes that the motion for summary judgment is a creature of the Tennessee Rules of Civil Procedure that apply to circuit, chancery, and other courts exercising the jurisdiction of circuit and chancery courts. Because the Rules of Civil Procedure do not apply to administrative agencies, Yokley contends, the ALJ was without authority to grant a motion for summary judgment.

The Tennessee Rules of Civil Procedure state that their scope is limited to the courts listed above. Tenn. R. Civ. P. 1. However, the regulations promulgated by the Tennessee Department of State provide that administrative agencies may use the Tennessee Rules of Civil Procedure for guidance in determining the procedure to follow in situations not specifically addressed by the Department of State rules.[1] TENN. COMP. R. & REGS. 1360–4–1–.01(3) (2004). In addition, the Uniform Administrative Procedures Act directs the ALJ to permit the parties to submit motions at appropriate stages in the proceedings, T.C.A. § 4–5–308(a) (2005),[2] and the Department of State rules allow parties in a contested case to seek "relief in the form of a motion."[3] TENN. COMP. R. & REGS. 1360–4–1–.09(2) (2004). Clearly, the ALJ

---

1. The rule provides as follows:

   In any situation that arises that is not specifically addressed by these rules, reference may be made to the Tennessee Rules of Civil Procedure for guidance as to the proper procedure to follow, where appropriate and to whatever extent will best serve the interests of justice and the speedy and inexpensive determination of the matter at hand.

   TENN. COMP. R. & REGS. 1360–4–1–.01(3) (2004).

2. The statute provides as follows: "The administrative judge or hearing officer, at appropriate stages of the proceedings, shall give all parties full opportunity to file pleadings, motions, objections and offers of settlement." T.C.A. § 4–5–308(a) (2005).

3. The rule provides as follows:

   Parties to a contested case are encouraged to resolve matters on an informal basis; however, if efforts at informal resolutions fail, any party may request relief in the form of a motion by serving a copy on all parties and, if an administrative judge is conducting the contested case, by filing the motion with the Administrative Procedures Division, Office of the Secretary of State. Any such motion shall set forth a request for all relief sought, and shall set forth grounds which entitle the moving party to relief.

   TENN. COMP. R. & REGS 1360–4–1–.09(2) (2004).

has the authority to grant a motion for summary judgment.

█ Next Yokley contends that the grant of summary judgment in this case was improper because it denied him the opportunity for a hearing. *See* T.C.A. § 4–5–322(h)(1) ("[i]n violation of ... statutory provisions") or (3) ("[m]ade upon unlawful procedure").

Under Tennessee Code Annotated § 49–1–302(a)(5)(A)(ii), the Board of Education has a duty to adopt policies governing "[t]he revocation of licenses and certificates" of school teachers. T.C.A. § 49–1–302(a)(5)(A)(ii) (2005 & Supp.2008). The rules and regulations promulgated by the Board set forth the requirements to be fulfilled before revocation of a teacher's license:

> Any person whose license is to be denied, suspended or revoked under part (b) or who is refused a license or certificate under part (c) shall be entitled to written notice and an opportunity for a hearing to be conducted as a contested case under the Tennessee Uniform Administrative Procedures Act, T.C.A. § 4–5–301, et seq.

TENN. COMP. R. & REGS. 0520-2-4-.01(9)(d) (2006). A "contested case" is defined in Section 4–5–102(3) as follows:

> "Contested case" means a proceeding, including a declaratory proceeding, in which the legal rights, duties or privileges of a party are required by any statute or constitutional provision to be determined by an agency after an opportunity for a hearing. Such proceeding may include rate making; price fixing; granting of certificates of convenience and necessity; the making, review or equalization of tax assessments; the granting or denial of licenses, permits or franchises where the licensing board is not required to grant the licenses, permits or franchises upon the payment of a fee or the finding of certain clearly

defined criteria; and suspensions of, revocations of, and refusals to renew licenses. An agency may commence a contested case at any time with respect to a matter within the agency's jurisdiction.

T.C.A. § 4–5–102(3) (2005 & Supp.2008). It is clear, then, that Yokley was entitled to "an opportunity for a hearing" prior to the revocation of his license. The issue then becomes whether "an opportunity for a hearing" mandates an *actual* hearing in every case, or whether an ALJ may grant a motion for summary judgment in the appropriate case.

To determine the requirements for the Board's license revocation proceedings, we first examine the prior, separate DCS proceedings related to Yokley's classification as an "indicated perpetrator of child physical abuse." It is undisputed that DCS identified Yokley as an "indicated perpetrator of child physical abuse" and held a hearing on this classification, and that the classification became final on September 19, 2002. DCS rules provide that a final order of the agency may be reviewed by filing a petition for judicial review in the Chancery Court. TENN. COMP. R. & REGS. 0250-5-10-.02 (2002). Yokley did so, and his petition was dismissed. The dismissal of his petition for judicial review of the DCS classification was not appealed further.

Years later, in February 2005, the Board of Education instituted proceedings to revoke Yokley's teaching license. At that point, Yokley's only available option to have his DCS classification reversed was to file a Rule 60 motion seeking relief from the original Chancery Court order dismissing his petition for judicial review. The Board proceedings to revoke Yokley's license were in effect held in abeyance while he pursued Rule 60 relief on the separate DCS classification. The Rule 60 motion

was unsuccessful, and Yokley's DCS classification as an "indicated perpetrator of child physical abuse" remained intact.

Yokley does not challenge the Board's assertion that it has no authority to consider the merits of the DCS classification. He does not indicate what, if any, evidence he would present if the summary judgment were reversed and he was granted a hearing. Yokley's only arguments go to whether the Board, despite Yokley's DCS classification, should have refrained from revoking his teaching license. Yokley contends that the Board could have pursued options other than revocation, that it would be inequitable to rely on the indicated perpetrator classification from four years prior to revoke his license, and that the DCS classification did not constitute "good cause" to revoke his license.[4] Yokley had the opportunity to make all of these arguments to the ALJ in his response to the Board's motion for summary judgment.

Moreover, the ALJ clearly considered whether lesser remedies were available to the Board. The ALJ submitted a question to the Board, asking it to explain why revocation of Yokley's teaching license was the only option. At the time that the Board of Education was considering whether to revoke Yokley's teaching license, the DCS rules provided as follows:

Following final resolution of the case, whether by administrative hearing, court order, or waiver by the alleged perpetrator, the Department will notify the employer, agency, licensing authority, or other organization in which the individual provides instruction, care, supervision, or treatment of children with which the individual is associated in writing of the decision.

(a) If the classification of the report as "validated" has been upheld, the employer, agency, licensing authority or other organization in which the individual provides instruction, care, supervision, or treatment of children will be required to continue to assure nonaccess as provided in paragraph (3)(b)2, and the notice shall so state.

TENN. COMP. R. & REGS. 0250–7–9–.09(5) (1999). Paragraph (3)(b)2 provided as follows:

That the employer, agency, licensing authority, or other organization in which the individual provides instruction, care, supervision, or treatment for children must immediately take action to assure that the individual has no access to or contact with any child in their care until further notice by the Department.

TENN. COMP. R. & REGS. 0250–7–9–.09(3)(b)2 (1999). Thus, the DCS regulations mandated that if an individual receives a classification such as Yokley's "indicated

---

4. The Board's rule governing license revocation at the time Yokley's license was revoked provided as follows:

The State Board of Education may revoke, suspend or refuse to issue or renew a license for the following reasons:
1. Conviction of a felony,
2. Conviction of possession of narcotics,
3. Being on school premises or at a school-related activity involving students while documented as being under the influence of, possessing or consuming alcohol or illegal drugs,
4. Falsification or alteration of a license or documentation required for licensure,

5. Denial, suspension or revocation of a license or certificate in another jurisdiction for reasons which would justify denial, suspension or revocation under this rule, or
6. Other good cause. Other good cause shall be construed to include noncompliance with security guidelines for TCAP or successor tests pursuant to T.C.A. § 49–1–607, default on a student loan pursuant to T.C.A. § 49–5–108(d)(2) or failure to report under part (e).

TENN. COMP. R. & REGS. 0520–2–4–.01(9)(b) (2006).

perpetrator" classification, a "licensing authority" must "immediately take action" to make certain that the individual "has no access to or contact with any child in their care" and "to continue to assure nonaccess." TENN. COMP. R. & REGS. 0250–7–9–.09(3)(b)2, (5) (1999).

In this case, Yokley's indicated perpetrator classification was upheld. The Board of Education is charged with issuing and revoking teaching licenses. T.C.A. § 49–1–302(a)(5)(A)(i), (ii) (2005). A teaching license clearly facilitates the licensed individual's access to children. Therefore, as a licensing authority, the Board was required to ensure that Yokley had "no access to or contact with any child in their care until further notice by" DCS. TENN. COMP. R. & REGS. 0250–7–9–.09(3)(b)2 (1999). The Board argued that this could be accomplished only by revoking Yokley's teaching license, and the ALJ agreed. Thus, the Board's motion for summary judgment was granted.

■ Here, the ALJ clearly viewed the consideration of the Board's motion for summary judgment as having fulfilled the requirement that it afford Yokley "an opportunity for a hearing" under the regulations promulgated by the Board of Education. *See* TENN. COMP. R. & REGS. 0520–2–4–.01(9)(d) (2006). An administrative body's interpretation of its own rules and regulations is entitled to deference by the Court. *Exxon Corp. v. Metro. Gov't of Nashville & Davidson County,* 72 S.W.3d 638, 641 (Tenn.2002) (citations omitted). In this instance, Yokley had no evidence to present, only legal arguments that could be fully considered in the context of the Board's motion for summary judgment. We are not persuaded that the ALJ was required to conduct a pointless evidentiary hearing. This argument is without merit.

We are mindful that the standard of review for the trial court as well as this Court is a limited one. An appellant such as Yokley may prevail only if he establishes that the agency's decision violates constitutional or statutory provisions, exceeds its statutory authority, was made upon unlawful procedure, was arbitrary and capricious, or was unsupported by the evidence. *See* T.C.A. § 4–5–322(h) (2005); *Terminix,* 77 S.W.3d at 191. Yokley has established none of the statutory bases for modification or reversal of the ALJ's grant of summary judgment in favor of the Board of Education. Therefore, we must affirm the Chancery Court's decision.

The decision of the trial court is affirmed. The costs of this appeal are taxed to the appellant Jarral S. Yokley, and his surety, for which execution may issue if necessary.