# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
### October 24, 2014 Session

## C. EDDIE SHOFFNER v. TENNESSEE CONSOLIDATED RETIREMENT SYSTEM

**Appeal from the Chancery Court for Davidson County**
**No. 130557II     Carol L. McCoy, Chancellor**

---

### No. M2014-00070-COA-R3-CV - Filed December 29, 2014

---

An individual employed by Claiborne County as Director of Schools was terminated over two years earlier than the employment term set forth in the parties' contract. The county and the individual entered into another contract ("modified contract") whereby the individual agreed to work as Safety Coordinator for five months and be compensated in an amount equal to the amount he would have been paid had the prior contract not been terminated. This resulted in a salary increase of nearly $40,000 per month for each of the five months the individual was employed as Safety Coordinator. The modified contract provided that the employee would be paid whether he performed any work or not, and the employee agreed to waive and release any claims he might have against the county. When the employee applied for retirement benefits, the agency in charge of calculating the amount of benefits did not treat the nearly $40,000 increase in compensation as "earnable compensation" because the additional compensation was not for "services rendered," as required by the statute. The employee contested this decision, and the administrative law judge ("ALJ") ruled in favor of the agency, granting the agency's motion for summary judgment. The employee filed a petition for judicial review, and the trial court affirmed the ALJ's decision. The employee appeals the trial court's judgment to this Court, and we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

ANDY D. BENNETT, J., delivered the opinion of the court, in which RICHARD H. DINKINS, and W. NEAL MCBRAYER, JJ., joined.

C. David Briley and Susan High-McAuley, Nashville, Tennessee, for the appellant, C. Eddie Shoffner.

Robert E. Cooper, Jr., Attorney General and Reporter; Joseph F. Whalen, Acting Solicitor General; and Mary Ellen Knack, Senior Counsel, for the appellee, Tennessee Consolidated Retirement System.

**OPINION**

C. Eddie Shoffner ("Dr. Shoffner") was employed by Claiborne County as Director of Schools pursuant to a two-year contract beginning July 1, 2007. At the end of the two-year term, Claiborne County and Dr. Shoffner agreed that Dr. Shoffner would continue as Director of Schools for another four years. They executed another contract extending Dr. Shoffner's position as Director of Schools for four more years, from July 1, 2009, through June 30, 2013. Both contracts set Dr. Shoffner's compensation at $97,964 per year, which was to be paid in equal monthly installments of $8,163.67.

At a meeting on September 7, 2010, the Claiborne County Board of Education (the "Board") voted to terminate Dr. Shoffner's position as Director of Schools. The only reason given for the termination was that it was "what the voters in their district wanted." Thereafter, the Board voted in December 2010 to approve a contract modification agreement. The modification agreement was dated February 5, 2011, and provided that Dr. Shoffner would be employed by Claiborne County "in the position of Safety Coordinator and not as Director of Schools." The term of Dr. Shoffner's employment as Safety Coordinator was September 1, 2010, through June 30, 2011.

Dr. Shoffner's total compensation as Safety Coordinator was to be $236,746.43, which equaled the twenty-nine months of pay remaining on his prior contract as Director of Schools. The compensation was to be paid in five equal monthly installments of $47,349.29. These monthly payments were $39,185.62 more than Dr. Shoffner had been paid under his earlier contract as Director of Schools.

The modified contract provided that Dr. Shoffner could not be terminated; he was to be paid regardless of whether or not he was relieved of his duties. Paragraph four of the modified contract stated:

> Employee may not be terminated for any reason prior to June 30, 2011, but he may be relieved of any or all duties at any time. Employee shall be solely responsible for development of employment duties during the term of this agreement.

Dr. Shoffner agreed to release any claims he might have in paragraph five of the modified contract. The relevant language provided:

2

The parties agree that this modification of the contract of employment, previously entered into between the parties, . . . shall act as a full release and compromise of all contractual claims that could have otherwise been brought by the employee under the terms of the contract as previously entered between the parties as against anyone, including the Board, Claiborne County, and its subdivision and its employees or former employees, commissioners, boards, and officials of any type.

Then, paragraph six continued in the same vein:

Employee specifically acknowledges that he is waiving and releasing any rights he may have under the federal Age Discrimination in Employment Act in addition to any and all other federal or state statutes and any and all common law actions. . . .

In accordance with the modified contract, Dr. Shoffner received monthly payments in the amount of $47,349.29 in February, March, April, May, and June 2011, for a total of $236,746.45. In March 2011, Dr. Shoffner filed an application for retirement benefits with the Tennessee Consolidated Retirement System ("TCRS"). Dr. Shoffner stated that his monthly compensation for the final five months of his employment was $47,349.29.

TCRS determined that the increase of $39,185.62 in monthly payments Dr. Shoffner received for each of the last five months immediately preceding his retirement did not constitute "earnable compensation," as that term is defined in Tenn. Code Ann. § 8-34-101(14)(A), and should not be considered in calculating Dr. Shoffner's monthly retirement benefits. Instead, TCRS determined that these payments were

payoffs of the remaining three years left on [Dr. Shoffner's] original contract in exchange for [Dr. Shoffner's] agreement (i) to retire from the School System earlier than he otherwise would have and (ii) to release or otherwise waive any contractual or other common law actions he may have against the Board of Education for terminating him without cause from the position of director of schools.

TCRS calculated Dr. Shoffner's retirement benefits based on the monthly salary of $8,163.67 that Dr. Shoffner received as Director of Schools, prior to his termination. Dr. Shoffner disagreed with the refusal by TCRS to treat the full amount of his five final monthly payments as earnable compensation and requested an informal conference pursuant to Rules 1700-3-2-.03 and 1700-3-2-.06 of the Rules of the Treasury Department, Division of the Tennessee Consolidated Retirement System.

3

An informal conference hearing was held on July 3, 2012. The issue to be decided was "whether the [TCRS] was in error in finding that the $39,185.62 monthly pay increase received by Dr. Shoffner during each of the last five (5) months immediately preceding his retirement from the Claiborne County School System should not be included as earnable compensation for retirement purposes." In a ruling issued on July 12, 2012, the Deputy Treasurer of TCRS concluded that "TCRS was not in error in concluding that the $39,185.62 monthly pay increase received by Dr. Shoffner during each of the last five (5) months immediately preceding his retirement . . . should not be included as earnable compensation for retirement purposes."

Dr. Shoffner initiated contested case proceedings with the TCRS Board of Trustees on September 7, 2012. TCRS filed a motion for summary judgment, which the administrative law judge ("ALJ") granted on February 4, 2013. According to the ALJ,

> On February 5, 2011[the date of the modified contract], there were twenty-nine (29) months left on his original contract (29 x $8,163.67 = $236,746.43). The $236,746.45 was the exact amount of compensation stated in the modified contract. Commencing in February 2011, when the modified contract was signed, Dr. Shoffner was paid $47,349.29 per month for the last five months of the modified contract, which totaled the remaining $236,746.43 left on his original contract (5 x $47,349.29 = $236,746.45). The $47,349.29 per month payments received by Dr. Shoffner for the last five months immediately preceding his retirement from the School System were almost five times, or 500%, more than what Dr. Shoffner was receiving prior to his termination as director of schools.
>
> . . . .
>
> [S]ummary judgment should be granted in favor of TCRS as it is clear that the additional $195,928.10 the Petitioner received in his modified contract for the final five months of his employment was not earnable compensation as defined by law and was thus properly excluded by TCRS when calculating the Petitioner's retirement benefits. The additional sum paid to the Petitioner in the modified contract was not intended to be compensation paid to him for services rendered to the Board, but rather was a settlement between the parties for the termination of the Petitioner's contract. The Contract Modification Agreement entered into by the Petitioner and the Board on February 5, 2011, was essentially a "buy out" of his original four year contract that was to end June 30, 2013.

The ALJ continued:

It defies logic that the Board would pay the Petitioner $39,185.62 *more* per month as the Safety Coordinator than it was paying him as the Director of Schools. This would mean that the Board was paying the Petitioner $236,746.43, for five months as Safety Coordinator while it was paying him only $97,964.00 *per year* as Director of Schools. The absurdity of that contention requires no additional comment.

(Emphasis in original.)

The ALJ agreed with the TCRS that the compensation Dr. Shoffner was paid pursuant to the modified contract was not for "services rendered," but was a "mutually agreed upon settlement of his termination as Director of Schools and a buy out of his original contract." Thus, the ALJ concluded, TCRS was correct in determining that the extra $39,185.62 per month Dr. Shoffner was paid did not constitute "earnable compensation" and should therefore be excluded from the calculation of his retirement benefits. The ALJ approved the decision by TCRS to calculate Dr. Shoffner's benefits based on a monthly salary of $8,163.67 for the final five months of his employment because that is the amount Dr. Shoffner earned as Director of Schools and is the monthly salary Dr. Shoffner would have received through June 2013 had he not been terminated in September 2010.

TRIAL COURT PROCEEDINGS

Dissatisfied by the ALJ's decision, Dr. Shoffner filed a petition for judicial review in the chancery court pursuant to Tenn. Code Ann. § 4-5-322. Noting the narrow standard of review it was required to employ in reviewing the administrative decision, the trial court affirmed the ALJ's decision. The trial court concluded that the modified contract was not a contract to compensate Dr. Shoffner for any services he provided as Safety Coordinator, but rather was an agreement to buy out his second employment contract and to induce him to retire early, in 2011 rather than 2013.[1] The court further concluded that a purpose of the modified contract was to pretermit any legal claims that might arise from Dr. Shoffner's termination as Director of Schools.

The trial court explained its reasoning as follows:

---

[1]The trial court noted that if TCRS had included the extra $39,185.62 in its calculation of Dr. Shoffner's retirement benefits, Dr. Shoffner would have received a higher monthly retirement benefit than he had received as compensation when he was serving as Director of Schools.

5

While Dr. Shoffner focuses on his performance as Safety Coordinator, the compensation under the Modified Contract Agreement ($236,746.43) equals the exact amount of compensation due him for the three years remaining on his second contract had he not been terminated as Director of Schools. This identical amount provides a strong indicator that the intent of the parties in entering the Modified Contract Agreement was to pay off the remaining three years on Dr. Shoffner's second contract.

In addition to the specific amount of compensation, the parties' agreement was to buy out Dr. Shoffner's second contract. The Contract Modification Agreement stated that while the Petitioner "may not be terminated for any reason prior to June 30, 2011, he may be relieved of any or all of his duties at any time." In other words, the Board was obligated to pay the Petitioner the remaining $236,746.43 whether he rendered services or not.

Finally, other substantive provisions in the Modified Contract Agreement manifest that the parties intended the $47,349.29 monthly payments as a pay off of the remaining three years of his second contract in exchange for Dr. Shoffner's agreement: (1) to retire from the school system earlier than he otherwise would have -- on June 30, 2011, rather than June 30, 2013; and (2) to release any contractual and other employment-related legal actions he may have had against the Board for terminating him without cause as Director of Schools.

Dr. Shoffner appeals from the trial court's judgment, arguing that the ALJ's decision was in violation of statutory provisions, made upon unlawful procedure, arbitrary and capricious, and unsupported by any substantial or material evidence.

ANALYSIS

The Tennessee Administrative Procedures Act sets out the standard of review we must apply when reviewing an administrative decision. Tennessee Code Annotated section 4-5-322 provides, in pertinent part, the following:

The court may affirm the decision of the agency or remand the case for further proceedings. The court may reverse or modify the decision if the rights of the petitioner have been prejudiced because the administrative findings, inferences, conclusions or decisions are:

(1) In violation of constitutional or statutory provisions;

6

(2) In excess of the statutory authority of the agency;

(3) Made upon unlawful procedure;

(4) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or

(5)(A) Unsupported by evidence that is both substantial and material in the light of the entire record.

(B) In determining the substantiality of evidence, the court shall take into account whatever in the record fairly detracts from its weight, but the court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact.

Tenn. Code Ann. § 4-5-322(h).

There is no question that the ALJ was authorized to decide the case on summary judgment grounds. *See* Tenn. Code Ann. § 4-5-308(a); *Yokley v. State Bd. of Educ.*, 305 S.W.3d 523, 526-27 (Tenn. Ct. App. 2009); TENN. COMP. R. & REGS. 1360-4-1-.01(3); TENN. COMP. R. & REGS. 1360-4-1-.09(2). When the Court of Appeals reviews a trial court's review of an administrative agency's decision, "this Court essentially is to determine 'whether or not the trial court properly applied the . . . standard of review' found at Tenn. Code Ann. § 4-5-322(h)." *Jones v. Bureau of TennCare*, 94 S.W.3d 495, 501 (Tenn. Ct. App. 2002) (quoting *Papachristou v. Univ. of Tenn.*, 29 S.W.3d 487, 490 (Tenn. Ct. App. 2000)). A reviewing court generally defers to an administrative agency that has acted within its area of specialized knowledge, experience, and expertise. *Parker v. Shelby Cnty. Gov't Civil Serv. Merit Bd.*, 392 S.W.3d 603, 611-12 (Tenn. Ct. App. 2012); *Jones*, 94 S.W.3d at 501; *Willamette Indus., Inc. v. Tenn. Assessment Appeals Comm'n*, 11 S.W.3d 142, 146 (Tenn. Ct. App. 1999).

The ALJ's decision to grant TCRS summary judgment is supported by substantial and material evidence if the record contains "'such relevant evidence as a reasonable mind might accept to support a rational conclusion and such as to furnish a reasonably sound basis for the action under consideration.'" *Clay Cnty. Manor, Inc. v. State, Dep't of Health & Env't*, 849 S.W.2d 755, 759 (Tenn. 1993) (quoting *S. Ry. Co. v. State Bd. of Equalization*, 682 S.W.2d 196, 199 (Tenn. 1984)). The evidence supporting the administrative decision must be "more than a scintilla or glimmer," but it need not rise to the level of a preponderance of the evidence. *Jones*, 94 S.W.3d at 501 (quoting *Gluck v. Civil Serv. Comm'n*, 15 S.W.3d 486, 490 (Tenn. Ct. App. 1999)).

7

The requirements for a grant of summary judgment are well known. Summary judgment may be granted only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." TENN R. CIV. P. 56.04; *see Martin v. Norfolk S. Ry. Co.*, 271 S.W.3d 76, 83 (Tenn. 2008); *Penley v. Honda Motor Co.*, 31 S.W.3d 181, 183 (Tenn. 2000). "Summary judgments are appropriate in virtually any civil case that can be resolved on the basis of legal issues alone." *CAO Holdings, Inc. v. Trost*, 333 S.W.3d 73, 81 (Tenn. 2010) (citing *B & B Enters. of Wilson Cnty., LLC v. City of Lebanon*, 318 S.W.3d 839, 844 (Tenn. 2010)). Because the award of summary judgment involves a question of law, we apply a de novo standard of review to the ALJ's decision, with no presumption of correctness. *Martin*, 271 S.W.3d at 84.

Before addressing the merits of Dr. Shoffner's appeal, we believe it would be helpful to review briefly how an eligible individual's retirement benefits are calculated. Chapter 36 of Title 8 of the Tennessee Code Annotated governs retirement benefits of public officers and employees. An eligible individual's retirement benefits are calculated by first determining an individual's "average final compensation." Tenn. Code Ann. § 8-36-206(1). "Average final compensation" is defined as:

> the average annual *earnable compensation* of a member during the five (5) consecutive years of the member's creditable service affording the highest such average, or during all of the years in the member's creditable service if less than five (5) years . . . .

Tenn. Code Ann. § 8-34-101(4)(A) (emphasis added).

"Earnable compensation" is defined as "compensation payable to a member for services rendered to an employer." Tenn. Code Ann. § 8-34-101(14)(A). The General Assembly gives TCRS discretion in determining what constitutes earnable compensation. The statute provides that "[i]n all cases of doubt, the retirement system shall determine whether a certain payment is includable as earnable compensation." Tenn. Code Ann. § 8-34-101(14)(F).

There are no material facts in dispute in this case. The only issue is the legal question of whether the $39,185.62 increase in Dr. Shoffner's compensation during the final five months of his employment was for services Dr. Shoffner rendered to Claiborne County as its Safety Coordinator or whether this increase had some other purpose. Dr. Shoffner argues that, looking at the language used in the modified contract alone, there can be no other interpretation but that the full $47,349.29 Dr. Shoffner was paid in his final five months of employment constituted payment for his services as Safety Coordinator. Dr. Shoffner's argument is based on the following language of the modified contract: "The compensation shall be for services

8

rendered after the date of this agreement until the end of the term of this agreement." Dr. Shoffner contends that he performed the work he was engaged to perform in exchange for the compensation he was promised and that "[t]he mere fact that there is language in the Contract Modification Agreement which relieves Claiborne County of future liability relative to the prior contract does not change the fact that Dr. Shoffner was employed by Claiborne County to perform agreed-upon work in exchange for services rendered."

When interpreting a contract, "'[t]he cardinal rule . . . is to ascertain the intention of the parties and to give effect to that intention, consistent with legal principles.'" *Maggart v. Almany Realtors, Inc*., 259 S.W.3d 700, 703-04 (Tenn. 2008) (quoting *Bob Pearsall Motors, Inc. v. Regal Chrysler-Plymouth, Inc*., 521 S.W.2d 578, 580 (Tenn. 1975)). The contract as a whole must be considered, and all provisions of the contract should be given "reasonable meaning" in an effort to avoid "rendering portions of it neutralized or without effect." *Maggart*, 259 S.W.3d at 704.

Taking into consideration all parts of the modified contract, it is apparent that the increase in Dr. Shoffner's pay was compensation for more than Dr. Shoffner's services as Safety Coordinator. The express terms of the modified contract reveal that Dr. Shoffner (1) was to be paid whether or not he performed any services as Safety Coordinator, and (2) agreed to release any contractual and other employment-related legal actions he may have had against the Board for terminating him without cause as Director of Schools.

TCRS was not a party to the modified contract, and we are not limited to the four corners of the agreement to determine whether or not TCRS acted appropriately in calculating Dr. Shoffner's retirement benefits. Although we do not dispute the importance of the agreement, we find the circumstances leading up to the modified contract are relevant and necessary to consider as well in resolving the ultimate issue of whether the $39,185.62 increase was "earnable compensation" for purposes of calculating Dr. Shoffner's retirement benefits. The record indicates that at a meeting on November 11, 2010, the Board voted in favor of a resolution which stated:

> **WHEREAS**, the Claiborne County Board of Education requests to reallocate a portion of their 2010-2011 budget for the purpose of paying the remainder of the former Director of Schools contract.

The Claiborne County Commission did not adopt the resolution passed by the Board because the commission deemed it unacceptable to authorize payment to Dr. Shoffner when nothing would be received in return. Less than a month later, however, during a meeting on December 9, 2010, the Board met again and voted to approve the modified contract. As the trial court found, "This identical amount provides a strong indicator that the intent of the parties in

entering the Modified Contract Agreement was to pay off the remaining three years on Dr. Shoffner's second contract."

Dr. Shoffner acknowledges the statutory provision giving TCRS discretion to determine whether a certain payment is includable as earnable compensation. He focuses, however, on another section of the statute governing retirement benefits specifying that "earnable compensation" includes any bonus or incentive payment so long as it is not made for the purpose of increasing a member's retirement benefits or inducing a member to retire. *See* Tenn. Code Ann. § 8-34-101(14)(B)(i)(a). Dr. Shoffner asserts that the ALJ and trial court erred because, when viewed in a light most favorable to Dr. Shoffner, the facts did not establish that the payments were meant to increase his retirement benefits or to induce him to retire. The trial court did not address this argument by Dr. Shoffner other than to state that the argument lacked merit.

We agree that Dr. Shoffner's reliance on this provision is misplaced. Even if Dr. Shoffner could show the increase in pay was neither a bonus nor incentive to retire, that does not mean that the increase is earnable compensation. The increase in pay must be "for services rendered to an employer" before it can rise to the level of earnable compensation. Tenn. Code Ann. § 8-34-101(14)(A). Both the ALJ and the trial court determined that the increase was not for services Dr. Shoffner rendered as Safety Coordinator, but instead was a buyout of Dr. Shoffner's earlier contract and consideration for his agreement to waive and release any claims he may have had against the county.

The General Assembly explicitly granted TCRS the discretion to determine whether a payment is "earnable compensation," and TCRS is an agency with expertise in the area of calculating an individual's retirement benefits. We are not authorized to second-guess the discretion TCRS exercised in this case where there was substantial and material evidence to support the ALJ's decision to exclude the $39,185.62 monthly increase in Dr. Shoffner's compensation from the calculation of his retirement benefits.

Dr. Shoffner has not established that the ALJ's decision or the trial court's affirming ruling violated any statutory provision, that they were made upon unlawful procedure, that they were arbitrary or capricious, or that they were unsupported by substantial or material evidence. Accordingly, we affirm the ALJ's decision and conclude the trial court properly applied the standard of review set forth in Tennessee's Uniform Administrative Procedures Act when it affirmed the ALJ's decision to grant TCRS summary judgment and dismiss Dr. Shoffner's petition.

CONCLUSION

The trial court's judgment is affirmed. Costs of this appeal shall be assessed against the appellant, C. Eddie Shoffner, for which execution shall issue, if necessary.

_____

ANDY D. BENNETT, JUDGE